J-A08021-17

2017 PA Super 315

| | |
|---|---|
| IN RE: ESTATE OF MICHAEL J. EASTERDAY, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: COLLEEN A. EASTERDAY | No. 2911 EDA 2016 |

Appeal from the Order Entered March 22, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 46-2014-X3615

*****

| | |
|---|---|
| IN RE: ESTATE OF MICHAEL J. EASTERDAY, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MATTHEW M. EASTERDAY | No. 2946 EDA 2016 |

Appeal from the Order Entered March 22, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 46-2014-X3615

BEFORE: PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.*

OPINION BY LAZARUS, J.:                    **FILED OCTOBER 03, 2017**

These are cross-appeals from the order entered in the Court of

Common Pleas of Montgomery County, Orphans' Court Division, adjudicating

the rights of the parties with respect to pension and insurance benefits

_____

* Former Justice specially assigned to the Superior Court.

payable as a result of the death of Michael Easterday ("Decedent"). Upon review, we affirm.

Decedent died intestate on September 21, 2014. He was survived by two sons, Christopher and Matthew, a daughter, Amanda E. Easterday Melvin, and his second wife, Colleen A. Easterday. Matthew was granted letters of administration on the Decedent's estate. Just over one year prior to the Decedent's death, on August 13, 2013, Colleen initiated divorce proceedings against the Decedent in Lancaster County. Colleen was represented in the divorce action by David R. Dautrich, Esquire. Decedent did not retain counsel. The parties executed a postnuptial agreement ("PNA") on December 5, 2013, wherein they agreed, *inter alia*, to waive any rights in and to the pension and retirement plans of the other, including any right the parties may have as a surviving spouse or beneficiary thereof. The agreement provided that it was to remain in full force and effect regardless of reconciliation, a change in marital status or the entry of a final divorce decree, absent modification or termination of the agreement by the parties' written mutual consent. The parties never terminated or modified the agreement.

In November 2013, Attorney Dautrich's office prepared an affidavit of consent to divorce for Decedent's signature and gave the document to Colleen to give to Decedent to sign. Decedent signed the affidavit on November 30, 2013 and returned it to Colleen by hand. Colleen retained the affidavit in her possession for a period of time before returning it to her

counsel for filing on or before January 14, 2014. Attorney Dautrich was aware that Decedent's affidavit was dated more than thirty days earlier. Nevertheless, he instructed his staff to mail both parties' affidavits of consent to the Lancaster County Prothonotary for filing, which was done on January 14, 2014. The affidavits were time-stamped by the court on January 16, 2014. On January 24, 2014, Colleen filed a *praecipe* for divorce finalization and a *praecipe* to transmit the record. Decedent died before the decree was entered. At the time of Decedent's death, Colleen remained the named beneficiary of Decedent's pension and life insurance policy. Three days after Decedent's death, Colleen withdrew the divorce action.

On November 17, 2014, Matthew Easterday, as administrator of the Decedent's estate ("Estate"), filed a petition seeking to compel Colleen to preserve and turn over to the estate the life insurance proceeds and pension benefits she had received. The Estate argued that: (1) the parties' PNA controlled the disposition of the pension proceeds and required that distribution be made to the estate regardless of the beneficiary designation; and (2) Decedent's designation of Colleen as beneficiary of his insurance policy became ineffective under 20 Pa.C.S.A. § 6111.2.

In her answer and new matter, Colleen asserted that: (1) the PNA did not control the distribution of the pension proceeds because the parties never changed beneficiary designations; (2) section 6111.2 does not apply because the Decedent's affidavit of consent was stale and invalid; and (3)

- 3 -

the parties were in the process of reconciling prior to Decedent's death and Decedent intended that Colleen should remain the beneficiary of both his pension and insurance policies.

After a hearing held on October 20, 2015, and following the submission by the parties of memoranda of law, the Honorable Stanley Ott issued an order granting the Estate's petition in part and denying it in part. Specifically, the court concluded that the Estate was entitled to the Decedent's pension benefits pursuant to the PNA, but Colleen was entitled to the insurance proceeds, which were not addressed in the PNA. Both parties filed exceptions, which, after oral argument before the Orphans' Court sitting en banc, were deemed denied by operation of law pursuant to Pa.O.C.R. 7.1(f). These timely consolidated appeals followed.

The Estate raises the following issues on appeal:

1. Whether the Orphans' Court committed an error of law by holding that the Superior Court's decision in **Tosi v. Kizis**, 8[5] A.3d 585 ([Pa. Super.] 2014), *appeal den'd*, 626 Pa. 700, applies in the present case, and that **Tosi** required the Orphans' Court to consider the merits of the Estate's [p]etition under the legal fiction that there were no divorce proceedings pending at the time of Decedent's death, despite the factual reality that there was a divorce action filed by Colleen A. Easterday against the Decedent and which was pending in Lancaster County at the time of the Decedent's death.

2. Whether the Orphans' Court committed an error of law by not ruling that 20 Pa.C.S. § 6111.2 applies to this case to invalidate Decedent's designation of Colleen A. Easterday as beneficiary of Decedent's American General Life Insurance Policy because Decedent died domiciled in Pennsylvania during the course of divorce proceedings, no decree of divorce had been entered, but

grounds for divorce had been established pursuant to 20 Pa.C.S.A. § 3323(g) prior to Decedent's death.

Appellant's Brief of Estate, at 6-7.

In her consolidated appeal, Colleen raises the following issue for our review:

Did the Decedent make a deliberate and conscious choice that his wife was to be the irrevocable beneficiary of his Fed-Ex pension plan and that she was to receive those benefits after his death, even though a post-nuptial agreement contained a waiver signed by her regarding the Fed-Ex ERISA pension?

Appellant's Brief of Colleen Easterday, at 4.

We begin by noting our scope and standard of review of a decision of an Orphans' Court. The findings of a judge of the Orphans' Court, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. *In re Estate of Talerico*, 137 A.3d 577, 580–81 (Pa. Super. 2016), quoting *In re Jerome Markowitz Trust*, 71 A.3d 289, 297–98 (Pa. Super. 2013). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. *Id.* When the Orphans' Court arrives at a legal conclusion based on statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *Id.*, quoting *In re Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014) (citation omitted).

We begin with the claims raised by the Estate challenging the lower court's award of the life insurance proceeds to Colleen. The Orphans' Court concluded that, because Colleen withdrew the divorce action after Decedent died, the proper course was to proceed as if the action had never been filed and award the proceeds in accordance with the policy's beneficiary designation. The court found the provision of the Probate, Estates and Fiduciaries ("PEF") Code regarding the effect of a pending divorce on beneficiary designations, section 6111.2, to be inapplicable.[1] The court concluded that this result was compelled by this Court's holding in *Tosi v. Kizis*, 85 A.3d 585 (Pa. Super. 2014).[2] The Estate argues that the Orphans'

_____

[1] Section 6111.2 provides that, where a domiciliary of the Commonwealth designates his spouse as beneficiary of a life insurance policy and dies (1) during the course of divorce proceedings in which (2) no decree of divorce has been entered and (3) grounds have been established as provided in 23 Pa.C.S.A. § 3323(g), the spousal designation becomes ineffective for all purposes and must be construed as if the spouse or former spouse had predeceased the individual. 20 Pa.C.S.A. § 6111.2.

[2] In *Tosi*, Husband died during the pendency of divorce proceedings. At the time of Husband's death, both he and Wife had filed affidavits of consent, thus establishing grounds for divorce under section 3323. Four months after Husband's death, Wife filed a *praecipe* to discontinue the divorce action pursuant to Pa.R.C.P. 229. The trial court denied Husband's estate's petition to strike the discontinuance. On appeal, the estate asserted that, once the parties both filed affidavits of consent, section 3323(d.1) of the Divorce Code mandated that the parties' economic claims be resolved pursuant to the Divorce Code and that the court erred in allowing Wife to discontinue the action.

In affirming the trial court, this Court concluded that Wife's power to discontinue the action under Rule 229 was not preempted by section 3323(d.1). Rather, the Court found that "the language of [section
*(Footnote Continued Next Page)*

Court erred in applying *Tosi* and, consequently, in failing to apply section 6111.2. The Estate asserts that the holding in *Tosi* is a narrow one, limited to situations in which a party to a divorce action files a discontinuance seeking to avoid the application of equitable distribution rules after the death of the other party. Because neither Michael Easterday nor his estate ever sought equitable distribution under the Divorce Code, the Estate claims that this matter is outside the scope of the holding in *Tosi*. Rather, the Estate asserts, the disposition of the insurance proceeds is governed by section 6111.2, the application of which, it claims, is fixed as of the date of a decedent's death.

To the extent the decision of the Orphans' Court in this matter was grounded in the rationale of *Tosi*, it is unsound. In *Tosi*, Husband died during the pendency of divorce proceedings. At the time of Husband's death, both he and Wife had filed affidavits of consent, thus establishing grounds for divorce under section 3323. Four months after Husband's death, Wife filed a *praecipe* to discontinue the divorce action pursuant to Pa.R.C.P. 229. The trial court denied Husband's estate's petition to strike the discontinuance, and the estate appealed. On appeal, the estate asserted

*(Footnote Continued)* _____

3323(d.1)] merely provides that in the event of [the] death of one of the parties in a divorce action, the action **may** continue and the economic claims shall be determined under equitable distribution principles rather than under the elective share provisions of the [PEF] Code." *Tosi*, 85 A.3d at 589 (emphasis added).

that, once the parties both filed affidavits of consent, section 3323(d.1) of the Divorce Code mandated that the parties' economic claims be resolved pursuant to the Divorce Code and that the court erred in allowing Wife to discontinue the action.

In affirming the trial court, this Court concluded that Wife's power to discontinue the action under Rule 229 was not preempted by section 3323(d.1). Rather, the Court found that "the language of [section 3323(d.1)] merely provides that in the event of [the] death of one of the parties in a divorce action, the action **may** continue and the economic claims shall be determined under equitable distribution principles rather than under the elective share provisions of the [PEF] Code." **Tosi**, 85 A.3d at 589 (emphasis added).

In deciding this matter, the Orphans' Court concluded that, as Colleen had withdrawn the divorce action subsequent to Decedent's death, the holding in **Tosi** required him to proceed as though no divorce had ever been filed, which resulted in Colleen being entitled to the insurance proceeds as named beneficiary. Because the court proceeded under the fiction that the divorce action had never been filed, section 6111.2 did not apply to invalidate the beneficiary designation.

However, prior to the court's decision in this matter, on May 6, 2015, our Supreme Court adopted Rule of Civil Procedure 1920.17, effective July 1, 2015. Rule 1920.17 provides, in relevant part, as follows:

> (d) In the event one party dies during the course of the divorce proceeding, no decree of divorce has been entered and grounds for divorce have been established, neither the complaint nor economic claims can be withdrawn except by the consent of the surviving spouse and the personal representative of the decedent. If there is no agreement, the economic claims shall be determined pursuant to the Divorce Code[.]

Pa.R.C.P. 1920.17(d). The note to Rule 1920.17 specifically provides that "[t]o the extent that *Tosi* [] holds that 23 Pa.C.S. 3323(d.1) does not prevent the plaintiff in a divorce action from discontinuing the divorce action following the death of the defendant after grounds for divorce have been established, it is superseded." Pa.R.C.P. 1920.17(d), note.[3]

In adopting Rule 1920.17, the Court signaled its disapproval of the broad effect of *Tosi*, which effectively granted any surviving spouse the unilateral power to determine whether the assets of the deceased spouse would be distributed under the Divorce Code or the PEF Code, based solely on the self-interest of the surviving spouse, where grounds for divorce had been established. New Rule 1920.17 addresses this inequity by requiring that, where grounds have been established, a discontinuance may only be granted if the personal representative of the deceased spouse consents.

The Supreme Court superseded *Tosi* specifically as it applied to section 3323(d.1) of the Divorce Code, and did not address the possible

---

[3] We note that neither the Orphans' Court nor either of the parties acknowledged the adoption or impact of Rule 1920.17.

application of its rationale to section 6111.2 of the PEF Code.[4]  However, we believe that the Court's adoption of Rule 1920.17 provides a clear indication that the Court would look with similar disfavor upon an interpretation of section 6111.2 that would grant a surviving spouse/plaintiff the power to negate the intent of the statute – to protect a divorcing spouse from inadvertently providing a windfall to his or her surviving ex-spouse simply by neglecting to change a beneficiary designation – by discontinuing the divorce action after grounds have been established.  Thus, we decline to apply **Tosi** to the instant matter and hold that the Orphans' Court erred by doing so.

Having concluded that **Tosi** is not dispositive, we must determine whether section 6111.2 applies to invalidate Decedent's designation of Colleen as beneficiary of his insurance policy.  To that end, the key inquiry in this matter becomes whether or not grounds have, in fact, been established pursuant to 23 Pa.C.S.A. § 3323(g), such that the disposition of the insurance proceeds is determined under section 6111.2.

Section 3323(g) provides that where, as here, the parties are proceeding under section 3301(c) of the Divorce Code – the "no fault" provision – grounds are established where both parties have filed affidavits of consent.  Pursuant to Pa.R.C.P. 1920.42(b), affidavits of consent must be filed (1) ninety days or more after filing and service of the complaint and (2)

---

[4] Section 6111.2 was not at issue in **Tosi**.

- 10 -

within thirty days of the date the consents are executed. In this case, the Decedent's affidavit was filed more than thirty days after it was executed, in violation of Rule 1920.42. As a result, Colleen asserts, the Decedent's affidavit was invalid[5] and grounds were never established under section 3323(g). Accordingly, she argues, section 6111.2 does not apply.

The Estate, on the other hand, argues that, while strict compliance with the time limitations under Rule 1920.42(b) may be necessary to obtain a final decree of divorce, "section 3323(g), to which [s]ection 6111.2 refers, clearly contains no such time limitation." Appellant's Brief of Estate, at 31. The Estate asserts that neither section 3323(g) nor section 6111.2 imposes a time limit on the filing of the affidavits, nor do they explicitly incorporate the limits set forth in Rule 1920.42(b). As such, Decedent's otherwise untimely affidavit was sufficient, under the facts of this case, to establish grounds and require the application of section 6111.2.

Alternatively, assuming, *arguendo*, that the thirty-day limitation applies, the Estate asserts that this Court "has viewed untimely affidavits as valid to establish grounds for divorce under section 3323(g) . . . for various purposes, including a request to bifurcate a divorce claim from economic claims." **Id.** at 33, citing **Bonawits v. Bonawits**, 907 A.2d 611 (Pa. Super.

_____

[5] The Orphans' Court found the issue of the validity of Decedent's affidavit of consent to be a "red herring" in light of its determination that **Tosi** was dispositive and, thus, did not make a determination on the issue.

2006). Accordingly, strict compliance with the thirty-day time limit is not necessary to establish grounds for divorce under sections 3323 and 6111.2, and "a minor technical violation of a procedural rule should not invalidate an affidavit of consent filed by a party." *Id.* at 34.

Finally, the Estate argues that Colleen is judicially estopped from arguing that Decedent's affidavit was invalid because it was "disingenuous and directly contrary to the position she took in the [d]ivorce [a]ction." *Id.* at 35. Specifically, the Estate points to Colleen's *praecipe* to transmit, wherein she requested the divorce court to enter a decree of divorce based, in part, on the fact that both parties had filed their affidavits of consent. Only now that it is in her interest that the affidavit be deemed invalid, the Estate asserts, does Colleen argue the opposite position.

We first address the Estate's contention that the time limitation for the filing of affidavits of compliance as set forth in Rule 1920.42 is inapplicable and, thus, Decedent's affidavit, although untimely under the rule, was sufficient to establish grounds under section 3323(g). For the following reasons, we disagree.

The legislature has declared that "[t]he family is the basic unit in society and the protection and preservation of the family is of paramount public concern." 23 Pa.C.S.A. § 3102(a). In light of the various policy considerations favoring the protection of the family unit, the Rules of Civil Procedure preclude the entry of default judgments in the divorce context. *See* Pa.R.C.P. 1920.41. In keeping with these policy considerations and the

seriousness with which the dissolution of marriage is to be treated, Rule 1920.42(b) requires that the parties' affidavits of consent demonstrate a present intent to finalize a divorce by mandating that they be executed within thirty days of filing. Under the rule, stale affidavits may not form the basis for the entry of a final decree.

Where one party dies during the pendency of a divorce action, the establishment of grounds takes on added significance, as it will be the determinative factor in whether the parties' economic issues are settled under the Divorce Code or the PEF Code. In effect, section 3323(d.1) treats the establishment of grounds as the functional equivalent to the entry of a final decree, where the death of one party renders such finality impossible.[6]

_____

[6] Pennsylvania courts have long held that an action in divorce abates upon the death of either party and the death of a party prior to the entry of a final decree precludes the finalization of a divorce. ***See Taper v. Taper***, 939 A.2d 969, 973 (Pa. Super. 2007) (no statutory authority allows for entry of posthumous decree of divorce). However, in 2005, the legislature amended section 3323 of the Divorce Code to provide for the continuation of the action for economic purposes where one party dies prior to the entry of a final decree, but after grounds have been established. Under those circumstances, section 3323(d.1) directs a determination of the parties' economic rights under principles of equitable distribution rather than under the provisions of the PEF Code. ***See*** 23 Pa.C.S.A. § 3323(d.1). Under the prior version of the statute, the death of one spouse prior to the entry of a final decree resulted in the abatement of the action, leaving the surviving spouse to exercise his or her elective rights under the PEF Code. The 2005 amendment demonstrates a recognition on the part of the legislature that the prior state of affairs "ma[de] it difficult to advise clients on whether to bifurcate divorce proceedings, because of the difficulties often involved in predicting whether equitable distribution would provide a more favorable result than the elective share procedure." ***Id.***, cmt. In enacting section 3323(d.1), the legislature provided certainty, as well as a mechanism to
*(Footnote Continued Next Page)*

Given the added significance the establishment of grounds acquires under such circumstances, it is reasonable to conclude that the legislature intended to require compliance with the same procedural requirements precedent to the entry of a divorce decree. Consequently, we conclude that a "stale" affidavit of consent is insufficient to establish grounds under section 3323(g).

The Estate also argues that, even if the Rule 1920.42 time limit applies, we should not require strict compliance with it, because doing so would elevate form over substance. While, under other facts, this argument might be persuasive, under the present circumstances, we find that waiving the requirement would not effectuate justice where the Decedent had an opportunity to rectify the untimely affidavit but, for whatever reason, chose not to do so. The following facts, stipulated to by the parties, are relevant to this determination.

Diane Carroll, an employee at the law firm of Colleen's attorney, was contacted by judicial staff in the Lancaster County Court of Common Pleas, who advised her that the Decedent's affidavit of consent was stale and that he was required to sign and submit a new affidavit. Thereafter, on February 6, 2014, Carroll prepared and mailed a letter to the Decedent, explaining

_(Footnote Continued)_ ────────────

effectuate the parties' presumed intent which, but for the death of one of them, would have resulted in the entry of a final decree and a determination of their economic rights through equitable distribution.

- 14 -

that his original affidavit had been rejected as untimely and requesting that he sign and return a new affidavit, which Carroll enclosed for his signature. The day after she mailed that letter, Carroll spoke to the Decedent, explained the situation and told him that he would have to sign a new affidavit of consent. In the ensuing 7½ months leading up to the Decedent's death on September 21, 2014, Decedent failed to file the new affidavit or return it to Colleen's counsel for filing.

From these stipulated facts, it is far from clear that, at the time of his death, Decedent possessed a present intent to divorce, such that we should excuse the staleness of his affidavit of consent and conclude that grounds were established. If anything, Decedent's inaction, after having explicitly been advised of the necessity to re-execute his invalid affidavit of consent, evidences an intent to delay the proceedings, if not terminate them. Accordingly, we decline the Estate's invitation to overlook the affidavit's untimeliness.

Finally, the Estate argues that Colleen is judicially estopped from asserting the invalidity of Decedent's affidavit because she previously took a contrary position in the divorce action. Generally, under the doctrine of judicial estoppel, "a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." *In re Adoption of S.A.J.*, 838 A.2d 616, 620 (Pa. 2003) (citation omitted). This argument may be quickly dispensed with by noting that, although Colleen's counsel did file with the

prothonotary a *praecipe* to transmit the record on January 24, 2014, the document candidly noted that Decedent's affidavit had been executed on November 30, 2013, more than thirty days earlier. When this fact was brought to counsel's attention by the court, counsel made no argument that the affidavit's untimeliness should be excused. Rather, counsel prepared a new affidavit for Decedent's signature, mailed it to him, and contacted him to request that he re-execute the document. On these facts, it is readily apparent that the doctrine of judicial estoppel is inapplicable, most notably because, even assuming Colleen could be deemed to have previously taken a contrary position as to the affidavit's validity, that contention was not "successfully maintained."

Based on the foregoing, we conclude that grounds for divorce were not established pursuant to section 3323(g). Consequently, section 6111.2 does not apply to invalidate Decedent's beneficiary designation and the Orphans' Court did not err in awarding the proceeds of the Decedent's insurance policy to Colleen as the named beneficiary.[7]

We now turn to Colleen's sole appellate claim. The Orphans' Court ruled that the PNA entered into by the parties barred Colleen from retaining

---

[7] Although our analysis differs from that employed by the Orphans' Court in reaching its decision, we may affirm the lower court's ruling on any basis. *See Blumenstock v. Gibson*, 811 A.2d 1029, 1033 (Pa. Super. 2002) (appellate court not limited by trial court's rationale and may affirm on any basis).

Decedent's benefits under his FedEx pension plan and awarded them to the Estate. Colleen asserts that, despite the terms of the PNA, Decedent made a deliberate and conscious choice to give his Fed-Ex pension to Colleen after he died by making an irrevocable election that Colleen was to be the designated survivor beneficiary. Colleen cites the fact that she and the Decedent "remained in close contact, and that she assisted him with routine activities of daily living and was his constant and sole caretaker, up until the day that she found him dead[.]" Appellant's Brief of Colleen Easterday, at 6-7. Finally, Colleen asserts that the Employee Retirement Income Security Act ("ERISA") preempts Pennsylvania state law, specifically section 6111.2 of the PEF Code, as well as the terms of the parties' PNA. Thus, she argues, she is entitled to retain the pension benefits.

In response, the Estate asserts that the PNA – which was executed *after* the Decedent signed the pension beneficiary designation – clearly and unambiguously sets forth the parties' waiver of their rights to each other's pension benefits and that a written modification to the contrary was never executed by the parties. Moreover, the Estate asserts that the Decedent's alleged intent to "gift" to Colleen his benefits is irrelevant, as Colleen affirmatively waived her right to retain the benefits, regardless of whether or not Decedent wanted her to have them. Furthermore, the Estate argues that any alleged reconciliation between the parties is similarly irrelevant, as the PNA specifically provides that it remains in full force and effect despite any reconciliation between the parties. Finally, while conceding that, under

ERISA, the Decedent's plan administrators are precluded from disbursing his pension benefits to anyone other than Colleen as named beneficiary, the Estate asserts that ERISA does not invalidate or preempt Colleen's state law waiver of her right to retain the pension proceeds once they are distributed to her.

We begin our analysis by noting that a property settlement agreement is subject to the law governing contracts, and is to be reviewed as any other contract. **Mazurek v. Russell**, 96 A.3d 372, 378 (Pa. Super. 2014). Because contract interpretation is a question of law, our standard of review is *de novo* and our scope of our review is plenary. **Id.** When a contract is free from ambiguity, the court must interpret the contract as written. **Id.** Only where the contract terms are ambiguous may the court receive extrinsic evidence to resolve the ambiguity. **Id.**

Under Pennsylvania law, spouses may waive their rights to each other's pension benefits via a property settlement agreement, where such waiver is specific. **Layne v. Layne**, 659 A.2d 1048 (Pa. Super. 1995). In the instant matter, the parties' agreement provides as follows:

> 11. PENSIONS, 401(K) and IRA: Husband and Wife shall each retain 100% of their respective stocks, pensions, retirement benefits, profit sharing plans, deferred compensation plans, etc. and shall execute whatever documents necessary to effectuate this agreement.

Post Nuptial Agreement, 12/5/13, at ¶ 11.

> 1. Husband and Wife agree that any and all Pension, Profit Sharing or Deferred Compensation Plan of which Husband is a Participant, shall remain the sole property of Husband.

- 18 -

. . .

5A. Wife hereby [w]aives any joint or survivor annuity benefits[.]

*Id.* at Exhibit "B" ¶¶ 1 & 5A.

The language of the parties' agreement was clear and unequivocal regarding Colleen's waiver of her rights to Decedent's pension. In fact, Colleen does not dispute that, in executing the PNA, she effected a waiver of those rights. **See** Appellant's Brief of Colleen Easterday, at 10 ("This is true even though [Decedent's] wife, Colleen Easterday, signed a waiver giving up any right that she may have had in his pension."). Because the PNA is clear and unambiguous on its face, extrinsic evidence is inadmissible. Accordingly, Colleen's attempt to alter the terms of the written agreement with extrinsic evidence regarding Decedent's "actual intent" and the parties' alleged reconciliation must fail.[8]

Colleen's argument that her state law waiver is superseded by ERISA is similarly meritless. In support of this claim, Colleen relies on the decision of the United States Supreme Court in **Egelhoff v. Egelhoff ex rel. Breiner**, 532 U.S. 141 (2001). There, the Court held that statutes, such as

---

[8] In any event, the Agreement clearly and unambiguously states that it is to remain in effect regardless of any reconciliation by the parties. **See** Post Nuptial Agreement, 12/5/13, at ¶ 1 ("[I]t is the intent of the parties that any cohabitation or reconciliation of the parties shall not render this Agreement null and void, but rather, this Agreement shall remain in full force and effect until specifically modified/revoked by subsequent addendum or agreement."). The parties never modified or revoked the PNA.

section 6111.2 of the PEF Code, that provide for automatic revocation, upon divorce, of any designation of a spouse as beneficiary of non-probate assets was preempted, as they applied to plans governed by ERISA, because such statutes directly conflict with the ERISA requirement that plans be administered, and benefits be paid, in accordance with plan documents. Colleen's reliance is misplaced and her argument meritless.

In enacting ERISA, one of Congress' chief policy goals was to ensure national uniformity, certainty, and efficiency in the administration and distribution of covered benefit plans. **See id.** (principal goal of ERISA to enable employers to establish uniform administrative scheme, providing set of standard procedures to guide processing of claims and disbursement of benefits). Thus, individual state statutes are preempted to the extent they conflict with ERISA's requirement that plans be administered, and benefits be paid, in accordance with plan documents.

In 2009, on facts similar to the matter *sub judice*, the Supreme Court decided **Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan**, 555 U.S. 285 (2009). There, a participant in an ERISA pension plan designated his wife as his sole beneficiary. The couple subsequently divorced, and the wife waived her interest in her husband's pension plan. However, the husband died without amending the pension plan documents to replace his ex-wife as the designated beneficiary. The husband's estate claimed a right to the plan proceeds, citing the ex-wife's waiver. The plan administrator, however, relied on the husband's designation form and paid the funds to the ex-wife.

The husband's estate then sued the plan administrator to recover the benefits. The Supreme Court held that ERISA precluded the plan administrator from distributing the benefits to anyone but the named beneficiary, regardless of the existence of a valid waiver.

The Court left open, however, the question of whether the estate could recover the benefits from the ex-wife *after* she received them from the plan administrator. This question was subsequently answered in the affirmative by the United States Court of Appeals for the Third Circuit in **Estate of Kensinger v. URL Pharma**, 674 F.3d 131 (3d Cir. 2012), in which the Court held, under facts nearly identical to **Kennedy**, that ERISA does not bar an estate from attempting to recover pension funds distributed to an ex-wife who had executed a waiver of rights to those funds.

Similarly, here, ERISA presents no bar to the Estate's recovery of pension funds distributed to Colleen. Colleen's waiver was clear and unequivocal and is binding. The Estate is entitled, under principles of state contract law, to enforce the bargain entered into between Colleen and the Decedent. Accordingly, the Orphans' Court did not err in ordering that Colleen turn over to the Estate all sums received to date as beneficiary of Decedent's FedEx pension plan, as well as all remaining proceeds thereof that she is entitled to receive under the plan documents.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 10/3/2017*