JUSTICE WECHT, concurring and dissenting
I join in full the learned Majority's disposition of Colleen Easterday ("Easterday")'s cross-appeal. Maj. Op. at 324-47. However, because I disagree with the Majority's analysis of the Estate's appeal, I respectfully dissent from that portion of today's decision.
As the Majority details, pursuant to the Domestic Relations Code, a divorce decree can be entered "where it is alleged that the marriage is irretrievably broken and 90 days have elapsed from the date of commencement of an action ... and an affidavit has been filed by each of the parties evidencing that each of the parties consents to the divorce." 23 Pa.C.S. § 3301(c)(1). In addition, a procedural rule that this Court promulgated requires that the affidavit outlined in section 3301(c)(1) be filed within thirty days of it being signed. Pa.R.C.P. 1920.42(b)(2).
In 2004, the General Assembly amended section 3323 ; one change addressed the circumstance in which a spouse dies during the pendency of a divorce. One of the additions to the statute provides that, if a divorce decree has not issued, but grounds for a divorce have been established, the parties' economic issues will be resolved pursuant to the Domestic Relations Code rather than the Decedents, Estates, and Fiduciaries Code. Grounds are established, as relevant here, when "both parties have filed affidavits of consent." 23 Pa.C.S. § 3323(g)(2).
Further, 20 Pa.C.S. § 6111.2 provides that, when parties have divorced, if the former spouse is designated as a beneficiary of, inter alia , a life insurance contract at the time of the other party's death, then the beneficiary designation becomes ineffective. This provision effectively invalidates the beneficiary designation. The procedure differs slightly in the event that a spouse dies while the parties are in the midst of divorce proceedings. Section 6111.2 remains applicable if grounds have been established pursuant to 23 Pa.C.S. § 3323. Therefore, here, if grounds are established, section 6111.2 would invalidate Decedent's designation of Easterday as the beneficiary of his life insurance.
The Majority interprets Rule 1920.42's thirty-day filing requirement as a method to ensure that the parties share a current intent to divorce at the time that they request the divorce decree. Maj. Op. at 341. Because the General Assembly is presumed to know the existing law and because it neither has altered the rule's thirty-day requirement nor disclaimed it in section 3323(g)(2) when defining how grounds are established, the Majority concludes that the legislators must have intended to incorporate the rule's thirty-day requirement into section 3323(g)(2). Id. at 341-42. In reaching this conclusion, the Majority rejects the Estate's plain language *348 interpretation of section 3323(g)(2). Because I agree with the Estate's interpretation, I dissent.
The issue here is one of statutory interpretation. As we have said many times:
The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, courts first look to the language of the statute itself. Mohamed v. Com., Dep't of Transp., Bureau of Motor Vehicles , 615 Pa. 6, 40 A.3d 1186, 1193 (2012). If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. See 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous. 1 Pa.C.S. § 1921(c)....
Trust Under Agreement of Taylor , 640 Pa. 629, 164 A.3d 1147, 1155 (2017) (citations modified). As we view the words that the General Assembly has used, we "must also listen attentively to what [the statute] does not say." Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co. , 567 Pa. 514, 788 A.2d 955, 962 (2001) (quoting Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 COLUM. L. REV. 527, 536 (1947)).
The Estate argues that section 3323(g)(2) is unambiguous and that the plain language of the statute must control. Because there is nothing in the statute to indicate that there is any timeliness requirement, the Estate asserts that the Superior Court erred in concluding that the General Assembly intended to incorporate the procedural mandates of Rule 1920.42. By interpreting the statute in that fashion, the Estate maintains, the Superior Court essentially added terms to the statute that the General Assembly did not choose to include.
I agree with the Estate. We need not go beyond the plain meaning of the statute's words. And because we need not, we should not. Section 3323(g)(2) states that grounds are established when "both parties have filed affidavits of consent." To "file" is "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record." BLACK'S LAW DICTIONARY (10th ed. 2014). By its ordinary and common meaning, the statute requires only that each party's affidavit be delivered to the clerk of courts. Nothing in section 3323(g)(2) incorporates Rule 1920.42 or mandates a timeliness element for filing the affidavits. Had the General Assembly intended to impose a timeliness requirement, it could have done so. It could have defined grounds for divorce as requiring the timely filing of affidavits or the filing of affidavits in accordance with our procedural rules. The General Assembly having declined to do so, we "must ... listen attentively to what [the statute] does not say." Kmonk-Sullivan , 788 A.2d at 962. To establish grounds for divorce, the plain language of the statute requires only that the parties file the affidavits before either one of them dies.
The Majority concludes that the General Assembly intended to ensure that section 3323(g)(2) incorporated the present intent to divorce requirement included in Rule 1920.42. Maj. Op. at 342. I have no doubt that such a requirement would be sensible. But, of course, this is not the point. The point is that the General Assembly did not include such a requirement in the text of the statute. We should not disregard that text (or lack thereof) in order to pursue what we perceive to be the spirit of the *349 statute or in order to improve upon the General Assembly's work. There will be no end to that endeavor, an endeavor tantamount to cleaning the Augean stables. Nor is this our role.
Applying the plain language interpretive paradigm to this case, the next question is whether both parties filed their affidavits. The Majority determines unequivocally that "no affidavit of consent for Decedent was ever filed with the lower court." Id. at 342. Having reviewed the record, I must disagree.
In reciting the case's procedural history, the trial court observed that "[t]he parties filed affidavits pursuant to Section 3301 of the Divorce Code, consenting to the entry of a divorce decree on January 24, 2014." Tr. Ct. Op., 3/22/2016, at 2. Additionally, reviewing whether grounds had been established, the Superior Court concluded: "In this case, the Decedent's affidavit was filed more than thirty days after it was executed." In re Estate of Easterday , 171 A.3d 911, 916 (Pa. Super. 2017).
Unaccountably, the parties failed to make the docket sheet from the divorce action part of the record in this case. However, there are documents and testimony of record in this case which demonstrate that the Decedent's affidavit was filed as part of the divorce record. As part of the stipulated record into which they entered before the trial court in this case, the parties attached the documents from the divorce proceeding at Exhibit B.[1] Stipulation of Facts at 2, ¶ 16.[2] That stipulation includes a time-stamped, signed copy of the Decedent's affidavit. Also attached (at Exhibit D) is the cover letter from Easterday's attorney submitting the Decedent's affidavit for filing. In the stipulation, the parties agree that: (1) Easterday's attorney instructed his staff to mail the Decedent's affidavit for filing, even though he knew it was untimely; and, (2) a few days later, a staff member prepared and sent the praecipe to obtain the divorce decree. Id. at 4, ¶¶ 42, 43, 46. Further, the praecipe was rejected because the Decedent's affidavit was filed more than thirty days after signature. Id. at 5, ¶ 49.
Additionally, at the hearing before the trial court, when Easterday's attorney asked Easterday whether she was aware that the Decedent's affidavit was rejected, the Estate's attorney objected to the use of the term "rejected." In response, Easterday's attorney clarified that "it was never returned." N.T., 10/20/2015, at 46. He then rephrased the question, asking "Did you become aware that the divorce could not be finalized unless [the Decedent] signed a new affidavit of consent?" Id. at 47. Moreover, in her Answer to the Estate's petition, Easterday "specifically denied that valid grounds for divorce were established because Decedent never filed a valid Affidavit of Consent ... because the document filed with Decedent's signature was filed more than 30 days after he signed it ...." Answer of Easterday at 2-3, ¶ 11 (emphasis added).
While the docket sheet would be dispositive of the issue, it is clear on this record that the lower courts' conclusion that the Decedent's affidavit was filed was supported by the evidence.[3] While that affidavit *350 was not in compliance with Rule 1920.42 and would not permit the issuance of a divorce decree (hence, the praecipe for the decree was rejected), it was filed with the prothonotary. As we must apply a plain reading of the definition of grounds for divorce provided in section 3323(g)(2), that filing was sufficient to support the conclusion that grounds had been established. Thus, section 6111.2 invalidates the Decedent's life insurance beneficiary designation. I would reverse the Superior Court's holding upon this basis. Hence, I respectfully dissent from the Majority's holding on that issue.

Exhibit B begins with a Lancaster County Prothonotary cover sheet and a letter from Easterday's attorney requesting a copy of the docketed records.

At the October 20, 2015 hearing before the trial court, the parties agreed to enter the stipulation and attached exhibits into evidence. N.T., 10/20/2015, at 8-9.

To be sure, there was evidence of record that might suggest that the affidavit was not filed. But it cannot be doubted that the evidence is sufficient to support the lower courts' statements that the affidavit was filed.