J-A16023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUZANNE STAHL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIAN STAHL | : | |
| | : | |
| Appellant | : | No. 1764 EDA 2021 |

Appeal from the Order Entered August 23, 2021
In the Court of Common Pleas of Delaware County Civil Division at
No(s): 2012-06263

| | | |
|---|---|---|
| SUZANNE STAHL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIAN STAHL | : | |
| | : | |
| Appellant | : | No. 2562 EDA 2021 |

Appeal from the Order Entered October 22, 2021
In the Court of Common Pleas of Delaware County Civil Division at
No(s): 2012-06263

BEFORE:     McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 18, 2022**

Christian Stahl (Husband) appeals *pro se* from the orders entered in the

Delaware County Court of Common Pleas: (1) granting the petition of Suzanne

Stahl (Wife) to enforce the parties' settlement agreement; and (2) denying

---

[*] Retired Senior Judge assigned to the Superior Court.

Husband's motion to disqualify Wife's counsel.[1]  Husband raises numerous arguments challenging both orders.  We affirm.

## I.  Procedural History

Husband and Wife married on August 2, 2002, and at the time of the underlying orders, their four children were all minors.[2]

> On July 23, 2012, Wife filed a complaint in divorce.[ ]  On January 16, 2015, the parties signed a property settlement agreement.[ ]  On February 17, 2015, the trial court entered an order of divorce, which incorporated the property settlement agreement.  . . .

*Stahl v. Stahl*, 1304 EDA 2016 (unpub. memo. at 1-2). (Pa. Super. Jul. 14, 2017), *appeal denied*, 688 MAL 2017 (Pa. Mar. 27, 2018).[3]

Since 2015, however, there has been extensive litigation.  Wife summarizes — and Husband does not dispute — the parties'

> very long standing, highly contentious divorce, support, . . . custody [and Protection from Abuse proceedings.]  The Trial Court's divorce and custody docket in this matter alone contains approximately 456 docket entries.  [Husband has previously taken appeals at Superior Court dockets] 3025 EDA 2015, 1304 EDA 2016, 1905 EDA 2016, 2906 EDA 2016, 2907 EDA 2016 and 504 EDA 2019.

---

[1] This Court *sua sponte* consolidated the appeals by order of January 4, 2022.

[2] At the time of this writing, the oldest child is 18 years old.

[3] In 2017, Husband appealed from an order denying his petition to vacate the divorce decree and strike the property settlement agreement.  This Court affirmed.  *Stahl*, 1304 EDA 2016 (unpub. memo. at 1).

*See* Wife's Brief at 2.  Pertinent to this appeal, Husband has previously filed petitions to refer Wife's attorney, Craig Huffman, Esquire (Wife's Counsel), to the attorney disciplinary board, as well as to refer Wife to the district attorney's office for criminal prosecution.  Both petitions were denied, and in 2016, Husband's appeals to this Court were quashed.[4]

Husband has also unsuccessfully sued the Delaware County Domestic Relations Office.[5]  In addition, he has

> filed a Petition for Review in the Commonwealth Court of Pennsylvania at 385 MD 2017, alleging that certain Judges and a custody conciliator of the Delaware County Court of Common Pleas were conspiring with [Wife's] counsel to violate his civil rights.  The Delaware County Bench then issued a "whole bench recusal" and [this case] has been . . . handled by two [visiting] senior Judges . . . assigned by the Pennsylvania Supreme Court[:] the Honorable Leonard N. Zito from Northampton County and . . . the Honorable Robert J. Shenkin from Chester County.[6]

Wife's Brief at 2-3.

Wife's instant petition to enforce a settlement agreement arose from the following correspondence.  On April 20, 2021, Wife's Counsel sent an email message to Husband, which stated, pertinently:

---

[4] ***See Stahl v. Stahl***, 2907 EDA 2016 (quashal order) (Pa. Super. Oct. 14, 2016), *appeal denied*, 825 MAL 2016 (Pa. Apr. 10, 2017); ***Stahl v. Stahl***, 2906 EDA 2016 (quashal order) (Pa. Super. Oct. 14, 2016).

[5] ***Stahl v. Delaware County Domestic Rel'n Office***, 3179 EDA 2016 (quashal order) (Pa. Super. Dec. 5, 2016).

[6] Judge Shenkin entered the underlying orders of this appeal.

[Wife] has authorized me to make the following **offer** to settle this matter:

You will sign a [quit] claim deed to the [former marital] house immediately. . . .

[Wife] would pay you the amount of $19,000 in exchange for receiving a general release from you of any and all claims concerning the divorce, property settlement agreement, or child support[7] claims from the date prior to that general release.

\* \* \*

This would resolve all outstanding motions/petitions pending before the Court.[8]

Wife's Petition to Enforce Settlement, 6/3/21, Exh. D at 1-2 (emphasis added).

That same day, Husband replied to Wife's Counsel by email, stating:

Thank you for your **offer**. I would be willing to accept $25K. . . . Please let me know if we have a deal. If so you may write it up.

*Id.* at 1 (emphasis added). Two days thereafter, on April 22, 2021, Wife's

Counsel replied by email:

[Wife] is in agreement. I will prepare the Deed and General Release for your review and advise Judge Shenkin **we have reached an agreement**[.]

---

[7] We note: "[A]lthough one parent cannot bargain away a child's right to adequate support from the other, an agreement in which one parent releases the other from the duty of support will be enforced so long as it is fair and reasonable, was made without fraud or coercion, and does not prejudice the welfare of the children involved." *Roberts v. Furst*, 561 A.2d 802, 803 (Pa. Super. 1989). On appeal, neither party raises any challenge to this general release of child support claims.

[8] Wife also proposed she would accept Husband's suggestions, with respect to tax exemptions or deductions, as to which party would claim which children. Wife's Petition to Enforce Settlement, Exh. D at 2.

*Id.* at 1 (emphasis added).

However, six weeks later, on June 3, 2021, Wife filed the petition to enforce the parties' settlement agreement.[9] She averred Husband agreed to a settlement, but nevertheless subsequently sent an "11 page email" and "flatly refused to sign the Settlement Agreement Release." Wife's Petition to Enforce Settlement at 3 (unpaginated). Wife stated she "is tired of litigation with" Husband, which is "expensive and emotionally burdensome." *Id.* at 2. Wife did not believe "she would owe [Husband] any money if the [currently pending] petitions were . . . litigated," but nevertheless, "it was simply cheaper, from her perspective, to . . . settle the matter . . . assuming it precluded future litigation[.]" *Id.* at 3.

On June 22, 2021, Husband filed a petition to dismiss Wife's petition to enforce. He did not dispute the contents of the email correspondence, but asserted the settlement agreement, sent to him to execute, improperly: (1) included "a Release for everyone on the planet which would have [superseded his] contractual rights under the" 2015 property settlement agreement; and (2) omitted "some of [their] agreement and made new provisions not

_____

[9] Shortly thereafter, on June 15, 2021, Wife filed a petition to modify custody. Husband responded by filing a petition for contempt against Wife and a motion to dismiss, to which Wife filed separate answers. Following a partial hearing, the trial court issued an order on August 23rd, directing that a second hearing be held. This custody issue remained pending at the time of the instant notices of appeal.

discussed." Husband's Motion to Dismiss Wife's Petition to Enforce Settlement Agreement, 6/22/21, at 2.

The trial court conducted a hearing on August 16, 2021.[10] On August 23rd, the court entered the underlying order granting Wife's petition to enforce the settlement agreement, and denying Husband's petition to dismiss. The court found Wife's Counsel's first email message presented an offer, Husband's reply was a counter-offer, and Wife's response, that she was "in agreement," "was an unconditional and absolute acceptance of [Husband's] counter-offer." Trial Ct. Op., 1/7/22, at 2-3. In so concluding, the court rejected Husband's "claim[ ] that he did not understand [the terms] 'general release' and 'quit claim deed.'" *Id.* at 2. The court thus directed Husband to sign a quit claim deed to the house and the general release in favor of Wife. Order, 8/23/21, at 1. On August 30th, Husband filed: a motion for reconsideration; an "Objection to the General Release and Quitclaim Deed;" a

_____

[10] Wife asserts that at this hearing: the trial court directed both parties to sign the settlement agreement and general release; Husband in fact signed both, and he received the $25,000 payment from Wife; and thus "the matter should have been completed." *See* Wife's Brief at 10. Husband's reply brief does not deny this factual summary.

Although Husband filed a petition, accompanying his notice of appeal, to transcribe this hearing, no transcript was included in the certified record. Upon informal inquiry, the trial court advised this Court it does not have the transcript. Furthermore, the trial court's opinion makes no reference that the settlement agreement has been executed by both parties.

motion to stay the order; and a notice of appeal. The trial court denied the motion for reconsideration on September 8th.

Meanwhile, on August 13, 2021 — three days before the above hearing — Husband filed a motion to "disqualify" Wife's Counsel. He alleged counsel: (1) committed the criminal offense of extortion,[11] for acts allegedly committed in 2013; (2) committed perjury in connection with a 2016 request for attorneys' fees; and (3) violated numerous Pennsylvania Rules of Professional Conduct, related to claims set forth in Mother's 2012 divorce complaint. The trial court denied this petition on October 22nd, and Appellant filed a notice of appeal on November 19th.[12]

---

[11] 18 Pa.C.S. § 3923.

[12] Generally, "after an appeal is taken . . . the trial court . . . may no longer proceed further in the matter." Pa. R.A.P. 1701(a). Accordingly, once Husband filed a notice of appeal on August 30, 2021, the trial court was without jurisdiction on October 22nd to rule on his petition to disqualify Wife's Counsel.

Nevertheless, we note that if we were to apply Rule 1701(a) strictly, vacate the October 22, 2021, order, and quash the appeal therefrom, the trial court would, in the absence of any intervening change, likely enter the same order and Husband would appeal anew. Neither party has challenged the court's jurisdiction to enter the October 22nd order, and in the interests of judicial economy, we decline to vacate that order and quash. *See* Pa.R.A.P. 105(a) ("These rules shall be liberally construed to secure the just, speedy, and inexpensive determination of every matter to which they are applicable. In the interest of expediting decision . . . an appellate court may . . . disregard the requirements or provisions of any of these rules . . . on its own motion . . . .").

## II. Rule 1925(b) Statements

On September 8, 2021, and January 5, 2022, following each notice of appeal, the trial court directed Husband to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In its opinions, the trial court reasons that because Husband did not file any statement, all issues are waived.[13] Trial Ct. Op., 2/3/22, at 1; Trial Ct. Op., 1/7/22, at 1. *See* Pa.R.A.P. 1925(b)(4)(vii); ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (any issues not raised in a timely Rule 1925(b) statement are waived on appeal).

However, "[i]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation . . . . [T]herefore, we look first to the language of that order." ***Rahn v. Consol. Rail Corp.***, 254 A.3d 738, 745–46 (Pa. Super. 2021) (citations omitted). When the court's order "is inconsistent with the requirements of Rule 1925(b)(3)(iii), we hold that the waiver provisions of subsection (b)(4)(vii) do not apply." ***Id.*** at 746 (citation omitted).

Here, the trial court's Rule 1925(b) orders stated, in pertinent part:

[Husband] is hereby directed to file of record and serve upon the undersigned[ ] a concise statement . . . of the errors complained

---

[13] Husband attached to his brief a copy of a Rule 1925(b) statement that bears a "Filed" stamp with the date November 19, 2021 — the same date he filed a notice of appeal. However, there is no such statement in the original record, nor any corresponding docket entry on the trial court docket. In any event, as we discuss ***infra***, we decline to find waiver for any Rule 1925(b) deficiency.

of on appeal . . . . The Statement must be filed of record[ and] served upon the undersigned pursuant to Pa.R.A.P. . . . 1925(b)(1) . . . no later than [21] days from the date of the entry on the docket of this order. Any issue not properly included in the Statement timely filed and served pursuant to Pa.R.A.P. . . . 1925(b) shall be deemed waived. Attention of [Husband] is directed to Pa.R.A.P. . . . 1925(b)(4) which sets forth requirements for the Statement.

Order, 1/5/22; Order, 9/8/21.

Although the orders are generally compliant with Rule 1925(b)(3), they do not specify "the address to which the appellant can mail the Statement," as required by Subsection (b)(3)(iii). **See** Pa.R.A.P. 1925(b)(3)(iii). Because the orders are not entirely consistent with the requirements of the Rule, we decline to conclude Appellant has failed to comply with them. **See Rahn**, 254 A.3d at 746.

### III. Statement of Questions Involved

Appellant raises three claims for this Court's review.

I. The Honorable trial court abused its discretion and committed an error of law finding an enforceable contract existed in a brief email exchange between counsel and *pro se* [Husband] that necessarily modified the parties['] property settlement agreement which required modification to be in writing and signed; disposes of real property; added new terms and conditions in subsequent correspondence constituting a counteroffer which was rejected and where the communication between the parties clearly established there was no meeting of the minds.

II. The Honorable trial court abused its discretion and committed an error of law noting opposing counsel's "bad conduct" yet taking no action pursuant to Article V, Section 17(b) and Rule 2.15 of the Pa judicial canons.

III. The Honorable trial court abused its discretion and committed an error of law in [issuing] a judgement on the pleadings in

- 9 -

violation of Rule 1920.41 and Rule 1915.9 which both state: No judgment may be entered by default or on the pleadings.

Husband's Brief at 4-5.[14]

## IV. Wife's Petition to Enforce Settlement Agreement

First, Husband avers the trial court erred in finding the parties "brief email exchange" formed an enforceable contract. Husband's Brief at 22. We consider the following relevant principles and standard of review:

The enforceability of settlement agreements is governed by principles of contract law. To be enforceable, a settlement agreement must possess all of the elements of a valid contract. As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement.

\* \* \*

When there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact[.] **We will not reverse such finding unless it is unsupported by the evidence, or unless the fact finder has clearly abused its discretion or committed an error of law.** . . .

If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.

---

[14] We have reordered Husband's issues for ease of review.

*Commerce Bank v. First Union Nat'l Bank*, 911 A.2d 133, 145 (Pa. Super.

2006) (emphasis added).

Husband contends:

> **There was clearly no meeting of the minds.** [He]
> believed the parties **had agreed to come to terms** if possible
> back in March in lieu of hashing the matter out of court.
> [Husband] initiated the out of court dialog[ue] with [Wife] and
> ended up dealing with [Wife's Counsel's] vexatious, obdurate and
> dilatory practice yet again. Several versions later the TC was still
> carving out sections based on [Husband's] continued objections
> although not enough which left the court ordering a modification
> of the [property settlement agreement] while **threatening**
> **[Husband] with incarceration if he refused to sign**.
> [Husband] noted statutory concerns in paragraph [6] and case law
> in paragraph [8] of his [petition for] Reconsideration that the TC
> did not address.

Husband's Brief at 26 (emphasis in original & record citations omitted). We

conclude no relief is due.

Husband's *pro se* argument raises several broad, vague, unsupported

assertions, but lacks any specific allegation of trial court error.[15] For example,

he asserts the parties had "agreed to come to terms if possible back in March,"

---

[15] This Court has stated that while we are

> willing to construe materials of a *pro se* litigant liberally, . . . *pro
> se* status confers no special benefit upon an appellant. To the
> contrary, any person choosing to represent himself in a legal
> proceeding must, to a reasonable extent, assume that his lack of
> expertise and legal training will be his undoing.

*Thomas v. Thomas*, 194 A.3d 220, 229 (Pa. Super. 2018) (citations and
quotation marks omitted).

- 11 -

and that the trial court threatened to imprison him, but he provides no further explanation nor evidentiary support. *See* Husband's Brief at 26. Significantly, Husband does not challenge the contents of the parties' email exchange. Whereas he argued at the hearing that "he did not understand what was meant by a 'general release' and 'quit claim deed,'" Trial Ct. Op., 1/7/22, at 2, he has abandoned this contention on appeal. To the extent Husband now raises a factual question as to whether there was a meeting of the minds, *see* Husband's Brief at 26, we defer to the trial court's findings, reached after a review of the parties' exhibits and argument. *See Commerce Bank*, 911 A.2d at 145. The court emphasized that both Wife's Counsel's initial email and Husband's reply employed the term, "offer," and that Husband advised, "Please let me know if we have a deal." Trial Ct. Op., 1/7/22, at 2. The court found that in the final email message, Wife made "an unconditional and absolute acceptance of [Husband's] counter-offer." *Id.*

Finally, we consider Husband's contention that the 2015 property settlement agreement required any modification to be in writing. Husband's Brief at 29. He denies any "enforceable contract was created in the email dialog[ue,]" reasoning, "Where was the signature?" *Id.*

To the extent Husband conflates the parties' email correspondence to be the "modification" itself, we reject such a premise. Instead, we agree with the trial court that the email correspondence constituted an offer and acceptance, which led to the preparation of a release document. *See* Trial Ct.

Op., 1/7/22, at 2. Husband offers no explanation why the new release document, after proper execution by both parties, would not satisfy the "in writing" requirement. *See* Husband's Brief at 29.

For the foregoing reasons, we affirm the order granting Wife's petition to enforce the parties' settlement agreement.

## V. Husband's Petition to Disqualify Wife's Counsel

Next, Husband asserts the trial court erred in denying his petition to disqualify Wife's Counsel, where the court itself stated counsel engaged in "bad conduct." Husband's Brief at 14-15. We note: "[C]ourts possess the inherent power to disqualify counsel for a violation of ethical standards. An examination of the case law on the subject indicates that our review is plenary in these situations." *Vertical Res., Inc. v. Bramlett*, 837 A.2d 1193, 1201 (Pa. Super. 2003) (citations omitted). We address Husband's numerous arguments *seriatim*.

First, while Husband avers the trial court "went so far as to" find Wife's Counsel's engaged in "'BAD CONDUCT' in its 1925(b) opinion," Husband's Brief at 15, our review of the court's three-page opinion reveals no such statement. The only mention of "bad conduct" appeared in the following statement, which clearly rejected Husband's allegations: "[Husband's] motion does set forth a large amount of **alleged bad conduct** on the part of [Wife's] counsel but none of it is such that would move us to disqualify . . . counsel from

- 13 -

representing [Wife] in this matter." **See** Trial Ct. Op., 2/3/22, at 2 (emphasis added).

Husband next cites Wife's Counsel's "ongoing criminal and professional misconduct." Husband's Brief at 14. He avers he "has been under attack since" the 2012 divorce complaint, which raised a false claim that Wife "did not have access to the million dollars [that] she did." **Id.** at 19. Husband refutes the trial court's statement that he "has multiple avenues of recourse other than disqualification[,]"maintaining that in January 2018, he was "gag-ordered" by a different trial judge in this matter from reporting Wife's Counsel's crime of perjury to the Pennsylvania Supreme Court. **Id.** at 17.

> This Court has explained that disqualification of an attorney
>
> > is appropriate where the attorney has represented the opposing party in the past and may use confidential information gained in the course of that employment or where a conflict of interest exists that may prejudice the attorney's client. . . .

**Vertical Res., Inc.**, 837 A.2d at 1201. Husband has made no similar claims here — that Wife's Counsel previously represented him or would use confidential information, gained from such prior representation, against him. **See id.**

We note, however, that we have recognized a court's limited ability to sanction counsel for violations of the Rules of Professional Conduct:

> In **Commonwealth v. Lambert**, . . . 765 A.2d 306 (Pa. Super. 2000), this Court . . . stated that a trial court may sanction, warn or recommend disciplinary action against an attorney who has violated a Rule of Professional Conduct. **Lambert**, 765 A.2d at 345-46. Although disqualification and removal is an appropriate

- 14 -

sanction in some cases, it is a serious remedy "which must be imposed with an awareness of the important interests of a client in representation by counsel of the client's choice."

***Vertical Res., Inc.***, 837 A.2d at 1201 (some citations omitted).

Here, Husband again presents broad, vague allegations of "criminal and professional misconduct." ***See*** Husband's Brief at 14. He vaguely refers to "perjury," without any specific factual allegations. Husband also fails to explain why the trial court, in this divorce matter, would have jurisdiction to find counsel committed a criminal offense and enter a judgment of sentence. ***See In re Miles***, 170 A.3d 530, 535 (Pa. Super. 2017) (private criminal complaint is filed with the district attorney, who then "must investigate the allegations . . . to permit a proper decision on whether to approve or disapprove the complaint").

Next, Husband alleges the trial court violated Pa.R.C.P. 1915.9 and 1920.41, which both state, "No judgment may be entered by default or on the pleadings." Husband's Brief at 18. However, Husband ignores the context in which these rules appear. Rule 1915.9 pertains to actions for child custody, and Rule 1920.41 applies to divorce decrees. ***See*** Pa.R.C.P. 1915.1 (scope of Rules 1915.1 through 1915.25 is child custody actions); ***Est. of Easterday***, 171 A.3d 911, 916-17 (Pa. Super. 2017) (Rule 1920.41 "preclude[s] the entry of default judgments in the divorce context[;]" for example, Rule 1920.42(b) requires parties' affidavits of consent to demonstrate a present intent to finalize a divorce). The trial court's October 22, 2021, order addressed neither

- 15 -

custody nor a divorce decree. Instead, it ruled on an entirely different matter: Husband's petition to disqualify Wife's Counsel. Thus, Rules 1915.9 and 1920.41 are not applicable.

Husband also contends Wife's Counsel "reengineered" terms in the 2021 settlement agreement, including adding a release against counsel's law firm. Husband's Brief at 19. To the extent Husband contends he only agreed to waive claims against Wife personally but retained the ability to bring claims against her counsel, Husband offers no explanation what such claims could be and why they would not be derivative of "any and all claims concerning the divorce, property settlement agreement, or child support claims[.]" ***See*** Order, 8/23/21, at 1. We find no evidence to support Husband's claims that counsel committed criminal offenses or violated the professional rules of conduct.

Finally, Husband contends the trial court failed to address "the impact this decision [would have] on the best interests of the children in Custody." ***Id.*** at 19. Because he presents no discussion why the court was required to consider this issue, as a part of his petition to disqualify Wife's Counsel, this claim is waived. ***See Umbelina v. Adams***, 34 A.3d 151, 161 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

**VI. Conclusion**

As we conclude no relief is due on Husband's claims, we affirm: the August 23, 2021, order granting Wife's petition to enforce the parties' settlement agreement; and the October 22, 2021, order denying Husband's petition to disqualify Wife's Counsel.

Orders affirmed.

Judge Pellegrini joins the Memorandum.

Judge McLaughlin Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2022