JUSTICE DONOHUE
*333 In these cross-appeals, we consider two issues of first impression. The first issue involves the impact of a pending divorce action on a spouse's entitlement to life insurance benefits, and specifically the interplay between provisions of the Divorce Code, 23 Pa.C.S. §§ 3301 - 3904, the Probate, Estates, and Fiduciaries Code, 20 Pa.C.S. § 101 - 8815 ("PEF Code"), and Rule of Civil Procedure 1920.42(b). The second issue asks whether ERISA[1] preempts a state law claim to enforce a contractual waiver to receive pension benefits by the named beneficiary. For the reasons detailed herein, we affirm the decision of the Superior Court with regard to both issues.
Michael J. Easterday ("Decedent") and Colleen A. Easterday ("Easterday") married in 2004. Prior to marriage, Decedent worked for Federal Express and became a participant in a pension plan established by this former employer. He also purchased a $250,000 life insurance policy. Decedent designated Easterday the beneficiary of both during their marriage. The parties separated on July 12, 2013. On August 13, 2013, Easterday filed for a divorce in Lancaster County under section 3301(c) of the Divorce Code, which provides for a divorce by mutual consent of the parties. She and Decedent subsequently settled their economic claims in a property settlement agreement ("PSA") executed on December 5, 2013. Critical to our inquiry here, the PSA included the following provision:
Husband and Wife shall each retain 100% of their respective stocks, pensions, retirement benefits, profit sharing plans, deferred compensation plans, etc. and shall execute whatever documents necessary to effectuate this agreement.
Property Settlement Agreement, 12/5/2013, ¶ 11. The PSA further provided that its terms were to remain in effect unless the parties modified or terminated the agreement in writing.[2] Id. ¶ 14.
Section 3301(c), permits the entry of a divorce decree where three conditions are met: at least ninety days have elapsed since the filing of the divorce complaint; the parties allege that their marriage is *334 irretrievably broken; and the parties file affidavits consenting to the divorce (hereinafter "affidavits of consent"). See 23 Pa.C.S. § 3301(c). Pursuant to Rule of Civil Procedure 1920.42(b)(2), these affidavits of consent must be filed within thirty days of execution in order to be valid. Pa.R.C.P. 1920.42(b)(2).
Easterday's attorney prepared the affidavits of consent for both parties to sign.[3] Decedent signed his affidavit on November 30, 2013 and returned it to Easterday. Easterday held Decedent's affidavit until mid-January, at which time she executed her affidavit and returned them both to her attorney. On January 14, 2014, Easterday's counsel sent the affidavits to the prothonotary. Shortly thereafter, the prothonotary returned Decedent's affidavit of consent to Easterday's counsel, explaining that it was invalid because it was not filed within thirty days of the date of execution. In a letter dated February 6, 2014, Easterday's counsel asked Decedent to execute another affidavit of consent and return it for filing.
Decedent did not return a signed affidavit before he died, intestate, on September 21, 2014. Three days later, Easterday withdrew the divorce action. On October 4, 2014, Easterday applied for the proceeds of Decedent's $250,000 life insurance policy, in which she was named the beneficiary, and in December of the same year, she began to receive Decedent's pension benefits.
In the interim, on November 17, 2014, Decedent's son and executor of his estate, Matthew Easterday, filed a petition in orphans' court to compel Easterday to turn over the life insurance proceeds and all pension benefits. It was the Estate's position that the designation of Easterday as life insurance beneficiary was nullified pursuant to section 6111.2 of the PEF Code, which provides that where a spouse is named as the beneficiary and the policy holder dies during the course of divorce proceedings, the designation of the spouse is ineffective if grounds for divorce have been established. See 20 Pa.C.S. § 6111.2.[4] With regard to the pension benefits, the Estate argued that Easterday waived her right thereto in the parties' PSA.
In response, Easterday claimed that her waiver in the PSA to the receipt of Decedent's *335 pension benefits was not valid because Decedent never took any steps to remove her as the named beneficiary. She also argued that because Decedent did not file a valid affidavit of consent, section 6111.2 of the PEF Code did not divest her of her rights as a surviving spouse. Easterday argued that Decedent did not take either of these actions because they were in the midst of reconciling at the time of his death.[5]
After a hearing, the orphans' court found that section 6111.2 was not implicated because Easterday withdrew the divorce complaint after Decedent's death, thereby nullifying the only basis for the matter to proceed under the Divorce Code. Orphans' Court Opinion, 3/22/2016, at 5-6. The orphans' court relied on Tosi v. Kizis , 85 A.3d 585 (Pa. Super. 2014). In that case, the Superior Court ruled that section 3323(d.1) of the Divorce Code (which provides that parties' economic rights shall be determined under the Divorce Code where a party to a divorce action dies before the divorce decree is issued but after grounds for divorce have been established) is not mandatory in its application. As such, it concluded that the surviving spouse may still elect to discontinue the action, as provided by Rule of Civil Procedure 229, and proceed under the PEF Code. See Tosi , 85 A.3d at 588-89. It therefore refused to apply section 6111.2. Nonetheless, the orphans' court determined that the parties' PSA controlled the disposition of the pension and insurance proceeds. The trial court reasoned that because Easterday waived her right to Decedent's pension benefits in the PSA, she was not entitled to them. Orphans' Court Opinion, 3/22/2016, at 7-8. It further concluded that because the PSA was silent as to Decedent's insurance policy and Decedent never removed Easterday as the named beneficiary thereto, Easterday was entitled to those proceeds. Id. Both parties appealed.
The Estate challenged the orphans' court's reliance on Tosi and its resultant conclusion that section 6111.2 of the PEF Code did not apply in the present case. The Superior Court agreed, explaining that after Tosi was decided, this Court promulgated Rule of Civil Procedure 1920.17(d) and specifically disapproved of Tosi . Rule 1920.17(d) provides that when a party dies during the pendency of a divorce action and grounds for divorce have been established but no decree has issued, "neither the complaint nor economic claims can be withdrawn except by the consent of the surviving spouse and the personal representative of the decedent. If there is no agreement, the economic claims shall be determined pursuant to the Divorce Code." Pa.R.C.P. No. 1920.17(d). The note to this rule expressly addresses the Tosi decision, providing that "[t]o the extent that Tosi [ ] holds that 23 Pa.C.S. § 3323(d.1) does not prevent the plaintiff in a divorce action from discontinuing the divorce action following the death of the defendant after grounds for divorce have been established, it is superseded." Pa.R.C.P. 1920.17(d), Note.
The Superior Court acknowledged that Rule 1920.17 and the Note thereto conclusively establish this Court's "disapproval of the broad effect of Tosi , which effectively gave any surviving spouse the unilateral power to determine whether the assets ... would be distributed under the Divorce Code or the PEF Code[.]"
*336 In re Estate of Easterday , 171 A.3d 911, 915 (Pa. Super. 2017). Although this Court addressed only section 3323(d.1) of the Divorce Code in the Note to Rule 1920.17(d), the Superior Court concluded that our adoption of this rule signaled a "clear indication that [this] Court would look with similar disfavor" on an interpretation of section 6111.2 of the PEF Code that would allow a surviving spouse to unilaterally determine the manner of asset distribution. Id.
With the orphans' court's reliance on Tosi conclusively rejected, the Superior Court considered whether section 6111.2 invalidates Easterday's designation as beneficiary of the insurance policy. It decided that the answer turned on whether grounds for divorce had been established, as section 6111.2 only applies under such circumstances. Id. at 915-16.
Section 3323(g) of the Divorce Code defines "grounds for divorce." Relevant to the present dispute, it provides that grounds for a divorce under section 3301(c) are established where both parties have filed their affidavits of consent. 23 Pa.C.S. § 3323(g)(2). The Superior Court then recognized that Rule 1920.42(b) provides that for a divorce under section 3301(c), affidavits of consent must be filed (1) at least ninety days after the filing and service of the divorce complaint and (2) within thirty days of execution of their execution. Easterday , 171 A.3d at 916. Because Decedent's affidavit was executed more than thirty days after its execution, Easterday argued that it was invalid pursuant to Rule 1920.42(b)(2). Id. Consequently, she contended, grounds for divorce per section 3323(g) were never established and section 6111.2 of the PEF Code could not apply. Id.
The Estate, conversely, argued that compliance with Rule 1920.42(b) is necessary only for the issuance of a divorce decree by mutual consent. Id. Because neither section 3323(g) nor section 6111.2 of the PEF Code relate to the issuance of a divorce decree, the Estate claimed, the "time limitations" contained in Rule 1920.42(b) do not apply for their purposes (i.e., the manner of distribution of assets when a party to a divorce dies prior to the entry of a divorce decree). Id. Even if the court were to find that the thirty-day requirement applied, the Estate argued that strict compliance therewith should not be required. Id. Claiming that in another instance, the Superior Court found untimely affidavits of consent sufficient to establish grounds for divorce under section 3323(g) for purposes of a request for bifurcation, the Estate urged the Superior Court to likewise find that the technical violation of this procedural rule did not invalidate Decedent's affidavit of consent for purposes of determining the applicability of section 6111.2 of the PEF Code.[6] Id. (citing Bonawits v. Bonawits , 907 A.2d 611 (Pa. Super. 2006) ).
The Superior Court disagreed with the Estate. It began from the premise that because the legislature has declared the protection and preservation of the family unit is to be of "paramount public concern," the General Assembly prohibited the possibility of a default judgment in the context of divorce. Id. In keeping with this "seriousness with which the dissolution of marriage is to be treated," the Superior Court reasoned that Rule 1920.42(b)(2)'s requirement that affidavits of consent be filed within thirty days of execution ensures that the parties demonstrate a present intent to be divorced. Id. at 917. For *337 this reason, the court concluded, stale affidavits are not accepted for the entry of a decree. Id.
The Superior Court further concluded that where a death occurs during a divorce action, the question of whether grounds for divorce have been established is vital because it determines whether the parties' economic claims will proceed under the Divorce Code or the PEF Code.[7] In light of the "added significance" that the establishment of grounds for divorce acquires in the case of the death of a party, "it is reasonable to conclude that the legislature intended to require compliance with the same procedural requirements precedent to the entry of a divorce decree. Consequently, ... a 'stale' affidavit of consent is insufficient to establish grounds under section 3323(g)." Id.
The Superior Court was not swayed by the Estate's claim that strict compliance with Rule 1920.42(b)(2)'s thirty-day requirement should not be required in situations such as this, where establishment of grounds for divorce is necessary for a purpose other than the entry of a divorce decree. Conceding that this argument might be persuasive under other facts, the Superior Court found that because Decedent never remedied his defective affidavit, and in fact, never filed an affidavit before his death, "waiving this requirement would not effectuate justice[.]" Id. It noted that as Decedent did not file an affidavit of consent in the months between the time of Easterday's counsel's letter in February of 2014 and his death in September of the same year, "it is far from clear that, at the time of his death, Decedent possessed a present intent to divorce, such that we should excuse the staleness of his affidavit of consent and conclude that grounds were established." Id. at 918. This determination foreclosed the applicability of section 6111.2, and so the Superior Court found that the insurance proceeds were properly awarded to Easterday, as she was the named beneficiary thereof. Id.
Having resolved the Estate's claim, the Superior Court turned to the issue raised in Easterday's cross-appeal: whether the orphans' court erred in finding that the Estate is entitled to the pension benefits. Finding no error in the orphans' court's determination, the Superior Court acknowledged that property settlement agreements are subject to the law governing contracts; must be interpreted as written; and only where a term is ambiguous may a court consider extrinsic evidence to aid in resolving the ambiguity. Id. at 919 (citing Mazurek v. Russell , 96 A.3d 372, 378 (Pa. Super. 2014) ). The court found the PSA's waiver of pension benefits unambiguous and valid. Id.
The Superior Court rejected Easterday's claim that ERISA preempts state contract law in so far as it relates to Decedent's pension benefits. Easterday relied on Egelhoff v. Egelhoff ex rel. Breiner , 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), in which the United States Supreme Court found preempted a state statute that provided for the automatic revocation, upon divorce, of the designation of a spouse as beneficiary. The Superior Court explained that the paramount goal underlying ERISA is the uniform and efficient administration of benefit plans, and for that reason state statutes that interfere with this goal are preempted. Easterday , 171 A.3d at 920. However, the Superior Court also recognized that subsequent cases have established that preemption *338 is limited to furthering this goal (i.e., streamlining the administration of benefit plans), such that preemption does not extend to state law contract claims to recover benefits after their payment to the named beneficiary by a plan administrator. Id. (discussing Kennedy v. Plan Administrator for DuPont Savings & Investment Plan , 555 U.S. 285, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009), and Estate of Kensinger v. URL Pharma , 674 F.3d 131 (3d Cir. 2012) ).
Both parties filed petitions for allowance of appeal. We granted review of the following issue presented by the Estate:
Did the Superior Court decision deviate from well-established principles of statutory construction when the lower court held that the General Assembly intended to incorporate the thirty-day procedural requirement of Pa.R.C.P. 1920.42, with regard to the filing of affidavits of consent in divorce actions, into 20 Pa.C.S. § 6111.2, where the language of section is clear and unambiguous and does not contain such time limitation?
Supreme Court Order, 4/17/2018. On cross-appeal, we granted review of the following issue presented by Easterday:
Under an employee benefit plan governed by [ERISA], after a plan administrator distributes funds to the named beneficiary in accordance with the plan documents, can an estate attempt to recover those funds directly from the beneficiary pursuant to a contractual waiver of those benefits contained in a property settlement agreement?
Id.
We first turn our attention to the Estate's appeal. It contends that the Superior Court erred by relying upon the rule-based timing requirements for the filing of affidavits of consent when deciding that section 6111.2 of the PEF Code did not apply to invalidate Decedent's designation of Easterday as the beneficiary of his life insurance policy. We begin with a review of the relevant statutory provisions and related rules.
On April 3, 1980, the General Assembly enacted the Divorce Code, which included, for the first time, provisions permitting the entry of no-fault divorces. Section 3301(c)(1) of the Divorce Code states:
§ 3301. Grounds for divorce
(c) Mutual consent.--
(1) The court may grant a divorce where it is alleged that the marriage is irretrievably broken and [ninety] days have elapsed from the date of commencement of an action under this part and an affidavit has been filed by each of the parties evidencing that each of the parties consents to the divorce.
23 Pa.C.S. § 3301(c)(1). On July 1, 1980, this Court promulgated new procedural rules to implement the Divorce Code. Included in these new rules was Rule 1920.42, which authorizes the trial court to enter a divorce decree pursuant to sections 3301(c) and (d)(1) of the Divorce Code without need for further proceedings when certain filing and notice requirements have been met by the parties. See Pa.R.C.P. 1920.42. Subsection (b)(2) of that rule provides that the affidavit referenced in section 3301(c) "must have been executed ... within thirty days or more after both filing and service of the complaint." Pa.R.C.P. 1920.42(b)(2).
In 2004, the General Assembly enacted section 3323 of the Divorce Code specifically addressing the scenario when one spouse dies during the course of divorce proceedings. Section 3323 provides, in relevant part, as follows:
(d.1) Death of a party .-- in the event one party dies during the course of divorce proceedings, no decree of divorce *339 has been entered and grounds have been established as provided in subsection (g), the parties' economic rights and obligations arising under the marriage shall be determined under this part rather than under [the PEF Code].
* * *
(g) Grounds established .--For purposes of subsections (c.1) and (d.1), grounds are established as follows:
* * *
(2) In the case of an action for divorce under section 3301(c), both parties have filed affidavits of consent or, if the presumption in section 3301(c)(2) is established, one party has filed an affidavit of consent.
23 Pa.C.S. § 3323(d.1), (g)(2).[8]
As discussed, Decedent's affidavit of consent was executed more than thirty days prior to the date it was submitted for filing (and rejected). The Superior Court ruled that because the local Prothonotary rejected the filing of Decedent's affidavit of consent due to a lack of compliance with Rule 1920.42(b)(2)'s thirty-day validity requirement, grounds for divorce had not been established in accordance with section 3323(g)(2) of the Divorce Code at the time of Decedent's death. Because the Decedent's affidavit of consent was not filed, section 6111.2 of the PEF Code did not invalidate Easterday's designation as the beneficiary of Decedent's life insurance policy.
The Estate builds its argument on the principle that where the terms of a statute are clear and free from ambiguity, "the letter of it is not to be disregarded under the pretext of pursuing its spirit[,]" and that courts may not add language to a statute "which the Legislature may well have omitted by design and intent[.]" Estate's Brief at 14 (citing 1 Pa.C.S. § 1921(b) and Pennsylvania Human Relations Comm'n v. Mars Cmty. Boys Baseball Ass'n , 488 Pa. 102, 410 A.2d 1246 (1980) ). The Estate argues that by its clear and unambiguous terms, section 3323(g) contains no requirement that an affidavit of consent must be filed within thirty days of execution in order to establish grounds for divorce under section 3301(c) ; as such, it concludes that the Superior Court erred by reading that requirement into Rule 1920.42(b)(2). In other words, the Estate claims that the Superior Court, by requiring compliance with Rule 1920.42(b)(2), impermissibly altered section 3323(g)(2)'s clear definition of grounds for a divorce under section 3301(c). Estate's Brief at 14-16. If the General Assembly had intended grounds for a section 3301(c) divorce as defined in section 3323(g)(2) to include Rule 1920.42(b)(2)'s requirement, the Estate argues, the General Assembly explicitly would have included the same a requirement in the text of section 3323(g)(2) or, *340 alternatively, employed language indicating that the affidavits must be filed "in accordance with law" or "as provided by rule." Id. at 18-19. Echoing the argument it made before the Superior Court, the Estate claims that while the Rules of Civil Procedure applicable to divorce actions require that affidavits of consent be filed within thirty days of execution for the issuance of a divorce decree without a hearing, the Rules do not similarly impose any timing requirement on affidavits for the purpose of establishing grounds for divorce. Id. at 18.
Easterday responds that there was no error in the Superior Court's analysis resulting in its conclusion that section 6111.2 of the PEF Code does not apply in this case, as the relevant statutory provisions and Rule 1920.42(b)(2) are clear. Easterday's Brief at 19-20.
As discussed above, section 3323(d.1) and (g) were enacted specifically to alleviate an inequity that could arise when a party died during the course of a divorce action. In practical effect, sections 3323(d.1) and (g) ensure that where the parties have met the necessary requirements for the issuance of a divorce decree prior to a party's death, the death will not remove the adjudication of economic claims from the divorce action. For that reason, it is unsurprising that the requirements of section 3323(g)(2) are identical to the requirements for a divorce pursuant to section 3301(c), which defines the criteria for a divorce upon the mutual consent of the parties. Section 3323(g)(2) is, in essence, no more than a restatement of section 3301(c), as both require that the parties have filed affidavits of consent.
Marriage and divorce are traditionally regulated by the states. 27A C.J.S. Divorce § 22 (2019). Accordingly, the various state legislatures have the authority to prescribe the available grounds for divorce and are cabined only by constitutional limitations. Id. Our General Assembly exercised its authority in this regard when it enacted the Divorce Code in 1980. This sweeping reform brought no-fault divorce to the Commonwealth, which for the first time allowed for dissolution of a marriage "in a manner that recognizes the prior existence of the family as both an economic and a social unit, and that emphasizes the future welfare of each member of the family, instead of in a manner that identifies and punishes guilty parties." Gordon v. Gordon , 293 Pa.Super. 491, 439 A.2d 683, 693 (1981). In furtherance of that goal, the General Assembly enacted section 3301(c), a provision that allowed parties to obtain a divorce by mutual consent where the following minimal criteria are met: (1) there is an allegation that the marriage is irretrievably broken and (2) the parties file of affidavits of consent no sooner than ninety days after the filing of the complaint. 23 Pa.C.S. § 3301(c).
With the enactment of a new statutory scheme like the Divorce Code, a need arises for procedural rules to implement the new laws. This Court has exclusive authority to promulgate rules that govern the procedure in the courts of this Commonwealth. Payne v. Commonwealth Dep't of Corr. , 582 Pa. 375, 871 A.2d 795, 800-01 (2005). This authority emanates from Article 5, Section 10 of our Constitution, which provides that
[t]he Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts , justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice *341 shall require, ... and the administration of all courts and supervision of all officers of the Judicial Branch .... All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.
Pa. Const. art. V, § 10 (emphasis added). It is thus clear that while the General Assembly alone has the authority to create laws, this Court alone has the authority to prescribe the procedures by which those laws are enforced though the judiciary. As we have previously emphasized, the General Assembly creates and defines rights, and this Court then establishes the mechanisms by which those rights are implemented and vindicated. Payne , 871 A.2d at 801.
When the General Assembly enacted a new Divorce Code in 1980, we exercised our rulemaking authority, drafting a new set of rules to allow for the implementation of the Divorce Code's provisions. Jakstys v. Jakstys , 326 Pa.Super. 367, 474 A.2d 45, 48 (1984) ; see also Rules of Civil Procedure, Preface to Rules 1920.1-1920.92, Explanatory Cmt. We crafted the terms of this rule to further the General Assembly's laudable goal of providing parties that mutually consent to a divorce with a "detour around the ... delay, conflict, discord, and mounting legal fees" that can often accompany proceedings in an adversarial judicial system. Perlberger v. Perlberger , 426 Pa.Super. 245, 626 A.2d 1186, 1195 (1993).[9] Among these new rules was Rule 1920.42(b)(2), providing that affidavits of consent must be filed within thirty days of execution in order to trigger the procedure by which the court would enter a divorce decree by mutual consent without a hearing or further proceedings. See Rueckert v. Rueckert , 20 Pa. D. & C.3d 191, 193 (Pa. Com. Pl. 1981) (explaining that consent affidavits required for divorce "are limited by Pa.R.C.P. 1920.42 in that they must have been executed within [thirty] days of their filing").[10] By requiring that an affidavit of consent be executed within thirty days of its filing, Rule 1920.42(b)(2) provides, in essence, a "validity requirement" - ensuring that the affiants' acknowledgement of consent to divorce reflect their current intentions.
In the decades since our promulgation of Rule 1920.42(b), the General Assembly has amended various provisions of the Divorce Code on multiple occasions, but at no time has it amended any provision in a manner that would either eliminate or in any respect alter this Court's inclusion of a timing requirement for the signing of an affidavit of consent (i.e., within thirty days of filing) to effectuate a no-fault divorce under section 3301(c). The Superior Court has ruled on multiple occasions that "[t]he procedural requirements imposed by the Rules of Civil Procedure must be satisfied in order to endow the court with the authority to enter the decree in divorce." Lazaric v. Lazaric , 818 A.2d 523, 525 (Pa. Super. 2003) ; Creach v. Creach , 361 Pa.Super. 482, 522 A.2d 1133, 1136 (1987). We presume that when enacting legislation, the General Assembly is *342 aware of the existing law. Commonwealth v. Ramos , 623 Pa. 420, 83 A.3d 86, 91 (2013) ; White Deer Twp. v. Napp , 603 Pa. 562, 985 A.2d 745, 762 (2009) ; Commonwealth v. McClintic , 589 Pa. 465, 909 A.2d 1241, 1251-52 (2006) ; Knox v. Bd. of Sch. Dir. of Susquenita Sch. Dist. , 585 Pa. 171, 888 A.2d 640, 652 (2005). Thus, here we presume that the General Assembly was aware of Rule 1920.42(b)'s thirty-day validity requirement when it enacted section 3323(g)(2) in 2004 requiring the filing of affidavits of consent to establish grounds for a mutual consent divorce. At the time of section 3323(g)(2)'s enactment, Rule 1920.42(b)(2)'s validity requirement had been in effect for nearly twenty-five years. Section 3323(g)(2) is substantively identical to section 3301(c), with only minor discrepancies in phrasing, and, as discussed above, the aim of section 3323(g)(2) is virtually identical to the aim of section 3301(c) - to ascertain the certainty of the parties' present intent to divorce at the time of the death of a spouse - as reflected by the fact that both spouses have executed affidavits of consent within thirty days of their filing.
Thus, it is significant, and in fact dispositive here, that when enacting section 3323(g)(2), the General Assembly offered no indication that it intended to eliminate or alter Rule 1920.42(b)(2)'s thirty-day validity requirement with respect to application of section 3323(d.1)'s instructions when a spouse dies during the course of divorce proceedings. The General Assembly included no language in section 3323(g)(2) to signal an end to the necessity of compliance with Rule 1920.42(b)(2), clearly reflecting the General Assembly's intent that for purposes of application of section 3323(d.1) upon the death of a spouse, the decedent's affidavit of consent reflected a present consent to divorce at the time of his or her death. Section 3323(g)(2) merely provides that grounds for divorce are established when affidavits of consent are "filed," without any suggestion that the existing procedural rules for such filings were to be eliminated or altered in any respect. Rule 1920.42(b)(2)'s validity requirement is equally important to the granting of a section 3301(c) mutual consent divorce and to the determination of economic rights and obligations under section 3323(d.1) when a spouse dies during the course of divorce proceedings, as both circumstances require the filing of affidavits of consent reflecting the present intentions of the parties to divorce. In this regard, we further note that the General Assembly has not effectuated any amendment to section 3323(g)(2) since its enactment fifteen years ago.
Accordingly, we find no merit in the Estate's contention that the Superior Court "read into" section 3323(g)(2) a timing requirement that the General Assembly did not intend. Rather, the Superior Court merely applied section 3323(g)(2) in accordance with its express terms and our accompanying long-standing procedural rule. In this case, the lack of compliance with section 3323(g)(2) is clear, as no affidavit of consent for Decedent was ever filed with the lower court. The Prothonotary, upon receipt of an affidavit of consent signed by Decedent, refused to file it and instead, without objection by either party, returned it to Easterday's counsel based upon its failure to comply with Rule 1920.42(b)(2)'s thirty-day requirement. As such, grounds for divorce were not established prior to Decedent's death and thus, section 6111.2 of the PEF Code did not operate to revoke Easterday's designation at the beneficiary of Decedent's life insurance policy.
We now turn to Easterday's cross-appeal. As discussed, the PSA provided, inter alia, that Easterday would waive her right to participate in Decedent's pension benefits.
*343 We consider whether the Estate's action to recover the pension benefits paid to Easterday is preempted by ERISA. Easterday argues that ERISA must preempt enforcement of the PSA through the application of state contract law. In her view, to find otherwise would conflict with the underlying intent of ERISA; namely, to ensure that a surviving spouse receive the financial security that he or she was guaranteed by the designation as beneficiary. Easterday's Brief at 29; Easterday's Second Brief at 19-20. Citing In re Estate of Paul J. Sauers , 613 Pa. 186, 32 A.3d 1241 (2011), Easterday points out that this Court declared statutes that removed ex-spouses as beneficiaries of ERISA-governed plans to be preempted by the federal law. Easterday's Brief at 27. She argues, without much development, that it "logically follows" that state contract law is preempted as well. Id.[11]
The Estate responds that preemption is limited to laws that conflict with ERISA's control over employee benefit plans, and that a waiver of benefits made in a private agreement in no way conflicts with the administration of such plans. Estate's Second Brief at 12-13. The Estate draws our attention to the Third Circuit's decision in Estate of Kensinger , which concluded that such a waiver may be made in a contract and that preemption is not implicated with the application of state contract law. Id. at 13, 16-17.
ERISA protects against "the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." Gobeille v. Liberty Mut. Ins. Co. , --- U.S. ----, 136 S. Ct. 936, 946, 194 L.Ed.2d 20 (2016). Congress sought not only to protect these funds but also to reduce administrative and financial burdens attendant to employee benefit plans. Kennedy , 555 U.S. at 303, 129 S.Ct. 865.
Section 1144(a) of ERISA provides that the federal law "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" described therein. 29 U.S.C.A. § 1144(a). Despite the potential breadth of section 1144(a), the United States Supreme Court has held that the term "relate to" as used therein is not without limits. Gobeille , 136 S.Ct. at 943. Rather, whether a state law "relates to" a qualified employee benefit plan depends upon whether the state law impinges upon the objectives of ERISA, as well as its effect, if any, on ERISA-qualified plans. Egelhoff , 532 U.S. at 147, 121 S.Ct. 1322 ; In re Estate of Sauers , 32 A.3d at 1250.
In Egelhoff , the husband died after divorce but before removing his ex-wife as the beneficiary of his life insurance policy and pension plan. His estate sued the ex-wife in state court, arguing that a Washington state law nearly identical to section 6111.2 of our PEF Code, discussed above, nullified her beneficiary status. Egelhoff , 532 U.S. at 144-45, 121 S.Ct. 1322. Although the state courts roundly rejected the ex-spouse's preemption argument, the United States Supreme Court agreed with her. It explained (as discussed above) that whether a state law is preempted by ERISA depends on whether the state law intrudes on ERISA's core objectives and the extent of any effect the state law has on ERISA-governed plans. Id. at 147, 121 S.Ct. 1322.
Applying this standard, the Supreme Court concluded that the state law at issue (the section 6111.2 cognate) related to *344 ERISA plans for purposes of preemption because it required administrators to pay benefits to the beneficiaries chosen by state law rather than to those identified in the plan documents. Id. Thus, the state law ran contrary to various ERISA provisions, such as those requiring "that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' [by] making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of the plan.' " Id. (quoting 29 U.S.C. §§ 1002(8), 1104(a)(1)(D) ). In a similar manner, the Supreme Court found another impermissible connection with ERISA plans, in that the law thwarted the core objective of nationally uniform plan administration scheme. "Uniformity is impossible," the Court reasoned, "if plans are subject to different legal obligations in different states." Id. at 148, 121 S.Ct. 1322. For these reasons, it found the state law preempted.[12]
The high Court reaffirmed the core objectives of ERISA just a few years later in Kennedy v. Plan Administrator for DuPont Savings and Investment Plan , 555 U.S. 285, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009). There, the wife waived her right to the decedent's savings and investment plan ("SIP") pursuant to the terms of their divorce decree. Although the husband could have removed her as the named beneficiary, he failed to do so before he died. Upon the husband's death, the plan administrator paid the balance of the SIP account to the wife in conformity with the plan documents. His estate sued the plan administrator, arguing that the wife waived her right to the SIP funds. Although initially successful in the trial court, the Fifth Circuit reversed. The Supreme Court affirmed, but for reasons other than those relied on by the intermediate court.[13] Citing ERISA's requirements that all plans be established and maintained by a written instrument, and that plan administrators act strictly in accordance with the terms of the plan as written, the Supreme Court reiterated ERISA's paramount goal of establishing a uniform administrative scheme, with standardized procedures for the submission and processing of claims. Id. at 300-01, 129 S.Ct. 865 (discussing 29 U.S.C. §§ 1102(a)(1), 1102(b)(4), 1132(a)(1)(B) ). Promoting "an uncomplicated rule" requiring adherence to plan documents serves ERISA's goals of "simple administration, avoiding double liability, and ensuring that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." Id. at 301, 129 S.Ct. 865 (quoting Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown , 897 F.2d 275, 283 (C.A.7 1990) (Easterbrook, J., dissenting)). Thus, the wife's waiver impacted administration of the SIP because it "was ... standing in the way of making payments simply by identifying the beneficiary specified in plan documents[.]" Id. at 303, 129 S.Ct. 865. Accordingly, the Court concluded that it was preempted and therefore ineffective. Id.
Notably for our purposes, the Court recognized the limits of its decision and left *345 open the question of whether a party could seek to recover proceeds from a named beneficiary under state law after distribution by the plan administrator. Id. at 299 n.10, 129 S.Ct. 865. Only three years later, the Third Circuit entertained this very question. William and Adele Kensinger were married when William designated Adele as the beneficiary of his employer-sponsored 401(k) plan. Estate of Kensinger , 674 F.3d at 132. The parties eventually divorced, and as part of their property settlement agreement, the Kensingers mutually agreed to waive any rights to the other's retirement and deferred savings accounts, including the aforementioned 401(k). Id. at 132-33. William died nine months after the divorce proceedings concluded, without having changed the beneficiary designation for his 401(k) account. A dispute arose as to who was entitled to the account's proceeds, and William's estate eventually filed an action against Adele and the plan administrator, seeking a declaration as to its rights to the account's proceeds.[14]
Adele moved for summary judgment based on Kennedy . Agreeing that it was bound by Kennedy , the district court found that the plan administrator was required to distribute the funds in 401(k) account to Adele, but further concluded that the estate could not attempt to recover the proceeds from her, as doing so would violate ERISA's objective of ensuring that "the named beneficiaries actually receive the benefits[.]" Id. at 134 (emphasis in the original).
The Third Circuit reversed. It disagreed with the the district court's conclusion that an objective of ERISA is to ensure that the named beneficiary retains the benefits. Id. at 136-37. The Third Circuit explained that contrary to the district court's reading, Kennedy emphasized two central underlying objectives as the basis for its decision: (1) the establishment of uniform and efficient plan administration, and (2) protection against double liability for administrators. Id. at 135. Neither of these concerns, it concluded, are implicated in a dispute between Adele, the named beneficiary, and the estate, because an action between the estate and Adele "would in no way complicate ... administration of the plan." Id. at 136.
It rebuffed the district court's reliance on the statement in Kennedy that ERISA ensures that "beneficiaries get what's coming quickly" as support for its conclusion that ERISA "aims to provide certainty regarding the final distribution of ERISA benefits to beneficiaries[,]" such that "the possibility of a post-distribution action against a beneficiary would ... undermine this 'core objective' of the statute." Id. To the contrary, the Third Circuit reasoned, this statement must be considered in the context in which it arose. Id. at 136. Both Kennedy and the case upon which it relied, Fox Valley , involved claims against plan administers who had yet to distribute benefits. It found this distinction to be critical because "when read with that in mind, the goal of ensuring that beneficiaries 'get what's coming quickly' " is understood as referring to "the expeditious distribution of funds from plan administrators, not to some sort of rule providing continued shelter from contractual liability to beneficiaries who have already received plan proceeds." Id. Thus, "to the extent that ERISA is concerned with the expeditious payment of plan proceeds[,]" this concern extends only to the prompt payment of benefits to the named beneficiary.
*346 Id. at 136-37. Accordingly, the Third Circuit concluded, ERISA's concerns extend only so far as ensuring that Adele receive benefits and cease to exist after that point. Id. For that reason, William's estate could seek to recover the 401(k) account proceeds through a state law claim, as such a claim does not implicate or undermine any of ERISA's core objectives. Id. at 137.
We agree with the Third Circuit.[15] ERISA's focus is on the administration of employee benefit plans , not on the benefits, per se. As this Court previously recognized,
ERISA does not foreclose state legislation and regulation that manages only employee benefits; rather, ERISA solely governs the broader notion of employee benefit plans. According to the Supreme Court of the United States, an "employee benefit plan" is characterized by the "ongoing, predictable nature of [an] obligation therefore creating the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis." [ Fort Halifax Packing Co. v. Coyne , 482 U.S. 1,] 15 n. 9 [107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ]. Contrarily, when a state statute does not require, establish, or regulate an ongoing payment program, the concerns of ERISA are not implicated, as generally only the employee benefits are at issue. Id.
Estate of Sauers , 32 A.3d at 1250-51.
Property settlement agreements are contracts and as such are construed in accordance with the principles of our Commonwealth's contract law. Kripp v. Kripp , 578 Pa. 82, 849 A.2d 1159, 1163 (2004). A common law contract claim will be preempted only if it "relates to" a qualified employee benefit plan. Egelhoff , 532 U.S. at 146, 121 S.Ct. 1322. We determine whether such a relation exists by examining whether the state law impinges on the objectives of ERISA and its effect on ERISA-qualified plans. Id. at 147, 121 S.Ct. 1322 ; In re Estate of Sauers , 32 A.3d at 1250. It is clear that none of the articulated objectives, as discussed above, are implicated when an estate attempts to recover benefits that have already been distributed because at that juncture, the plan administrator is no longer part of the equation. Once the plan administrator makes payment in accordance with the plan documents, it satisfies ERISA's goals of regulating employee benefit plans and the administration thereof, protecting the plan administrator from double liability, and ensuring that the named beneficiary receives her benefits in a prompt manner. Kennedy , 555 U.S. at 301, 129 S.Ct. 865 ; Kensinger , 674 F.3d at 136-37. There is no indication that in drafting ERISA, Congress was concerned with the named beneficiary's right to retain the benefits. To the contrary, this consideration is wholly beyond the scope of ERISA because it is beyond the scope of plan administration. See Estate of Sauers , 32 A.3d at 1250-51. We therefore hold that section 1144(a) of ERISA does not preempt a state law breach of contract claim to recover funds that were paid pursuant to an ERISA-qualified employee benefit plan.[16]
*347 The Superior Court's judgment is affirmed.[17]
Chief Justice Saylor and Justices Baer, Todd, Dougherty and Mundy join the opinion.
Justice Wecht files a concurring and dissenting opinion.

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 -1461.

Decedent was already receiving his pension benefits at the time the parties executed the PSA.

Decedent was unrepresented in the divorce proceedings.

Section 6111.2 of the PEF Code provides:
§ 6111.2. Effect of divorce or pending divorce on designation of beneficiaries
(a) Applicability.--This section is applicable if an individual:
(1) is domiciled in this Commonwealth;
(2) designates the individual's spouse as beneficiary of the individual's life insurance policy, annuity contract, pension or profit-sharing plan or other contractual arrangement providing for payments to the spouse; and
(3) either:
(i) at the time of the individual's death is divorced from the spouse; or
(ii) dies during the course of divorce proceedings, no decree of divorce has been entered pursuant to 23 Pa.C.S. § 3323 (relating to decree of court) and grounds have been established as provided in 23 Pa.C.S. § 3323(g) .
(b) General rule.--Any designation described in subsection (a)(2) in favor of the individual's spouse or former spouse that was revocable by the individual at the individual's death shall become ineffective for all purposes and shall be construed as if the spouse or former spouse had predeceased the individual, unless it appears the designation was intended to survive the divorce based on:
(1) the wording of the designation;
(2) a court order;
(3) a written contract between the individual and the spouse or former spouse; or
(4) a designation of a former spouse as a beneficiary after the divorce decree has been issued.
20 Pa.C.S. § 6111.2 (a), (b) (emphasis added).

To support this claim, Easterday offered into evidence copies of text messages, emails, and other correspondence between Decedent and Easterday which, in her view, evidenced Decedent's desire that they reconcile and that she receive his pension and life insurance proceeds.

The Estate further argued that Easterday was judicially estopped from claiming that Decedent's affidavit of consent was invalid because she relied upon its validity when she file a praecipe to transmit the record. Easterday , 171 A.3d at 916. The Estate does not advance this argument in its appeal before this Court.

This is because section 3323(d.1) effectively treats grounds for divorce as the equivalent of a divorce decree where the death of a party renders the entry of such decree impossible. Easterday , 171 A.3d at 917.

Prior to 2004, it had long been the law of this Commonwealth that if a party dies while a divorce action was pending, the divorce abated and the economic claims that would have been adjudicated under the Divorce Code were subject to PEF Code and the laws governing probate and intestate succession. See Drumheller v. Marcello , 516 Pa. 428, 532 A.2d 807, 808 (1987) ("An action in divorce is personal to the parties and, upon the death of either party, the action necessarily dies."); Haviland v. Haviland , 333 Pa.Super. 162, 481 A.2d 1355, 1356-57 (1984) (holding rule that divorce action abated upon death of husband was not changed by divorce code). This created the possibility that although spouses may be in the process of dividing their marital estate, a surviving spouse could receive an unintended windfall (to the detriment of the deceased spouse's estate and natural objects of his or her bounty) by not only laying claim to all marital property but also exercising the right to the elective share of one-third of decedent's non-marital property. See 20 Pa.C.S. § 2203.

The Estate does not challenge our authority to enact Rule 1920.42(b), nor does it challenge the content thereof as an improper exercise of this Court's authority to promulgate procedural rules. As set forth above, the Estate challenges only the Superior Court's application of the Rule in its particular circumstances.

At the time of its initial enactment in 1980, the thirty-day filing requirement for an affidavit of consent to be valid was found in subsection (a)(2)(ii) of the Rule. See 10 Pa. Bul. 2967, 2969 (July 12, 1980). In 1983, the substance of the Rule was reorganized and the thirty-day validity requirement was recast into subsection (b)(2), where it has remained. See 13 Pa. Bul. 677, 679 (Feb. 12, 1983).

Easterday expounds that in Estate of Sauers , this Court followed the high Court's decision in Egelhoff v. Egelhoff , 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). We discuss these cases infra.

In Estate of Sauers , this Court examined Egelhoff and concluded that section 6111.2 was preempted by ERISA. Estate of Sauers, 32 A.3d 1241, 1257 (Pa. 2011). Egelhoff does not address the issue presently before us concerning preemption of a common law claim to proceeds post distribution.

The Fifth Circuit concluded that the wife's waiver was an impermissible alienation of her interest in the SIP proceeds, in violation of ERISA's anti-alienation provision. Kennedy , 555 U.S. at 290, 129 S.Ct. 865. This provision is not at issue in the appeal presently before us, nor was it determinative in the high Court's ultimate disposition in Kennedy . See id. at 299-300, 129 S.Ct. 865.

Although originally filed in state court, the plan administrator removed the case to federal district court. It was later dismissed from the action by agreement of the parties. Estate of Kensinger , 674 F.3d at 133, n.1.

We are not bound by the decisions of inferior federal courts as to issues of preemption, but may look to them as persuasive authority. Miller v. Se. Pennsylvania Transp. Auth. , 628 Pa. 78, 103 A.3d 1225, 1236 (2014).

We join a growing number of states in arriving at this conclusion. See , e.g., In re Christie , 152 A.D.3d 765, 767, 59 N.Y.S.3d 421 (N.Y. App. Div. 2017) ; Walsh v. Montes , 388 P.3d 262, 266 (N.M. Ct. App. 2016) ; Hennig v. Didyk , 438 S.W.3d 177, 183-84 (Tex. App. 2014) ; Appleton v. Alcorn , 291 Ga. 107, 728 S.E.2d 549, 552 (2012) ; Sweebe v. Sweebe , 474 Mich. 151, 712 N.W.2d 708, 712 (2006).

Easterday expends significant effort arguing against the lower courts' rulings that the waiver contained in the Easterdays' PSA controls. See Appellee's Brief at 22-26 (arguing that the PSA waiver provision does not control because Decedent did not change the beneficiary designation and Decedent in fact wanted Easterday to remain the beneficiary); Appellee's Second Brief at 15-20 (same). This argument is beyond the scope of the issue we accepted for review, which was limited to considering the question of preemption. See In re Estate of Easterday, --- Pa. ----, 184 A.3d 542 (2018) (per curiam).