J-S13033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF SCOTT A. HARMON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRENDA L. HARMON | : | |
| | : | |
| Appellant | : | No. 1574 MDA 2019 |

Appeal from the Order Entered August 30, 2019
In the Court of Common Pleas of Lycoming County Civil Division at
No(s):  08-21488

BEFORE:  STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED MARCH 27, 2020**

Brenda L. Harmon (Harmon) appeals the order of the Court of Common

Pleas of Lycoming County (trial court) directing her to relinquish the proceeds

she received as the primary beneficiary of a life insurance policy held by her

ex-husband, Scott A. Harmon (the Decedent).  We affirm.

**I.**

Harmon and the Decedent were married in 2002 and divorced by decree

of the trial court in 2009.  The decree incorporated by reference a Property

Settlement Agreement (Agreement) between Harmon and the Decedent.

Paragraph 9 of the Agreement, titled "Life Insurance, CD's, Etc.," specifically

---

[*] Retired Senior Judge assigned to the Superior Court.

refers to the waiver and relinquishment of "any and all interest in" a life insurance policy held by the other spouse:

> Each party hereby waives and relinquishes any and all interest in the others vacation pay, stocks, bonds, bank accounts, annuities, mutual funds, credit union accounts, life insurance, employee benefits and any pension plan, profit sharing plan, and/or retirement funds or accounts.

Property Settlement Agreement, 4/22/2009, at Paragraph 9.

Further, Paragraph 18 of the Agreement required both parties to "execute, acknowledge and deliver any and all instruments which may be necessary or advisable to carry into effect this mutual waiver and relinquishment of all such interest, rights and claims." *Id*. at Paragraph 18. Failure to abide by the terms of the Agreement subjects the breaching party to liability for the cost of resulting attorneys' fees. *Id*. at Paragraph 11.

Prior to his death, the Decedent had maintained a life insurance policy through his employer that was issued through the Hartford Life and Accident Insurance Company (the Hartford) and administered by the Central PA Teamsters Health & Welfare Fund. Harmon had, prior to the divorce decree, been named the primary beneficiary of the policy, and the Decedent's mother, Linda Eshenauer (Eshenauer), was named the alternative beneficiary.

In 2018, the Decedent passed away in an accident. After the Decedent's death, the Hartford advised Harmon that under the Employee Retirement

Income Security Act (ERISA),[1] she remained the Decedent's primary beneficiary even after her divorce, entitling her to $70,000 in proceeds. Half of that amount came from a death benefit of the policy and the other half came from the accidental death benefit. The entire sum is being held in the trust account of Harmon's attorney.

The Estate initially filed a "Motion for Contempt" against Harmon on October 17, 2018, seeking to enforce the waiver provisions of the Agreement. On December 6, 2018, the Estate filed a "Complaint Supplementing the Action in Contempt" which framed the issue as a breach of contract claim. **See** Complaint, 12/6/2018, at Paragraph 5. The Estate filed its complaint in the civil division of the Court of Common Pleas of Lycoming County under the docket number pertaining to the prior divorce case between the Decedent and Harmon in that county. Essentially, the Estate sought to compel Harmon to comply with the terms of the Agreement by paying it the proceeds from the Decedent's life insurance policy. **Id**. at Paragraphs 12-15.

Harmon filed an answer and new matter arguing that under ERISA, she was entitled to the insurance policy proceeds. The Estate filed an answer to the new matter as well as a motion for summary judgment. Both Harmon and the Estate then filed supplemental responses to the pleadings. In addition to the applicability of ERISA, Harmon asserted that the civil division of the Court

---

[1] 29 U.S.C. §§ 1001-1461.

of Common Pleas of Lycoming County had no authority to hear the suit because it fell within the exclusive jurisdiction of the orphans' court division.

In the order now on review, the trial court found that it could hear the case because under 20 Pa.C.S. § 711(1), the jurisdiction of the court of common pleas has to be exercised through the orphans' court division only when the case involves the "administration and distribution of the real and personal property of decedent's estate and the control of the decedent's burial[.]" **See** Trial Court Order and Opinion, 8/30/2109, at 1-2. The trial court reasoned that it was not mandatory for the orphans' court to adjudicate the matter because the property in dispute – the insurance policy proceeds – had to be dispersed according to the terms of a divorce decree and an incorporated Agreement. **Id**.

The trial court concluded that as a matter of law, Harmon had no right to the proceeds of the Decedent's life insurance policy because she had contractually relinquished her primary beneficiary status. **See id**. at 1-2 n.6. Further, the trial court ruled that the terms of the subject policy required the trial court to direct the Estate to distribute the proceeds to Eshenauer, the alternative beneficiary. **Id**. at 2. Having so ordered, the trial court denied

the Estate's motion for summary judgment and dismissed the Estate's complaint. *Id*.[2]

Harmon timely appealed the order directing her to remit the insurance proceeds to Eshenauer, and both Harmon and the trial court complied with Pa.R.A.P. 1925. *See* Trial Court's 1925(a) Opinion, 11/25/2019, at 2-9.

Harmon now presents three issues for our consideration in her appellate brief:

> 1.      Whether the Trial Court erred as a matter of law in finding that the civil division of Lycoming County Court of Common Pleas, as opposed to the Orphans' Court, possessed original jurisdiction of this matter pursuant to 23 Pa.C.S. § 3104(a)(4).
>
> 2.      Whether the Trial Court erred as a matter of law in holding that the language in the Property Settlement Agreement executed by Decedent and [Harmon] was specific and unambiguous and therefore revoked the beneficiary designation in Decedent's life insurance policy.
>
> 3.      Whether the Trial Court erred as a matter of law in dismissing the action at bar, and in doing so, finding that the general rule in 20 Pa.C.S. § 6111.2 controlled the distribution of the life insurance policy benefits, as opposed to [ERISA].

Appellant's Brief, at 6-7 (reordered and renumbered).[3]

---

[2] It appears that the trial court dismissed the Estate's action because it had ordered Harmon to remit the insurance proceeds directly to Eshenauer rather than to the Estate. This was a denial of the Estate's request to receive those funds despite the finding of merit in the Estate's substantive claim.

[3] The Estate also asked this Court to grant it attorneys' fees to recover against Harmon the costs of litigating its suit. *See* Appellee's Brief, at 10-11. The Estate had sought these fees in its complaint, but the trial court, in effect, denied them by dismissing the action. The Estate was aggrieved by that

**II.**

The threshold issue here is whether the trial court properly exercised jurisdiction when resolving the dispute over the Decedent's life insurance proceeds. Both parties agree that the orphans' court division has mandatory jurisdiction over matters that solely involve the distribution of a decedent's property. **See generally Estate of Gentry v. Diamond Rock Hill Realty, LLC**, 111 A.3d 194, 198-200 (Pa. Super. 2015). However, the parties differ as to whether their dispute over the enforceability of the Agreement presents such a case.[4]

A matter must be heard in the orphans' court if it concerns, among other things, the "administration and distribution of the real and personal property of decedents' estates[.]" 20 Pa.C.S. § 711; **see also In re Estate of Sauers**,

---

adverse ruling, but did not file a cross-appeal resulting in the waiver of the issue. **See Loughran v. Valley View Developers, Inc.**, 145 A.3d 815, 819 n.3 (Pa. Cmwlth. 2016) ("[A] party must file a cross-appeal when it is aggrieved and . . . the determination of whether a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party[.]"); **Green v. SEPTA**, 551 A.2d 578, 579 (Pa. Super. 1988) (a party is "aggrieved" if the order on review adversely affects the party); **see also** Pa.R.A.P. 511, Official Note (explaining that an appellee need not "file a cross appeal because the court below ruled against it on an issue," but must do so if the order being appealed did not grant the appellee "the relief it sought."); Pa.R.A.P. 501 (providing that any party may appeal if aggrieved by an appealable order).

[4] A ruling on the subject matter jurisdiction of a court is a pure question of law that is subject to *de novo* review. **See Estate of Gentry v. Diamond Rock Hill Realty, LLC**, 111 A.3d 194, 198 (Pa. Super. 2015).

32 A.3d 1241, 1249 (Pa. 2011) ("[A]dministrators of estates are charged with taking possession of, maintaining, and administering [life insurance proceeds], *see* 20 Pa.C.S. § 3311(a), and the Orphans' Courts are vested with the authority to ensure the[ir] proper distribution[.]").  A key exception is when a case involves "substantial questions concerning matters enumerated in section 711 and also matters *not* enumerated in that section."  20 Pa.C.S. § 712(3) (emphasis added).  In that event, it is not mandatory for the court of common pleas to exercise jurisdiction through its orphans' court division. *See id*.

We agree with the Estate that the issues involved in this case fall outside the exclusive purview of the orphans' court.  Essentially, the Estate's action turned on the enforceability of a waiver of rights in a divorce decree.  Such contractual disputes are not statutorily enumerated issues that must be adjudicated by an orphans' court.  *See generally* 20 Pa.C.S. § 711.  It is rather the type of case where the orphans' court has only non-mandatory jurisdiction because it concerns not just administration of an estate, but also the enforcement of contractual terms incorporated into a divorce decree.  *See id*. at Paragraph 712(3).

Thus, the trial court acted within its discretion in declining to transfer the case to the orphans' court division.  *See id*.; *see also Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 815–16 (Pa. Super. 2017) ("We agree with the trial court that because Appellee filed the Complaint that was

based upon a breach of contract and did not directly raise any issues regarding the administration of an estate, the trial court properly exercised subject matter jurisdiction over this matter.").[5]

## III.

## A.

Turning to the merits, Harmon argues that her waiver of an interest in the Decedent's life insurance policy was too vague to constitute a specific, unambiguous relinquishment of her right to the proceeds of the Hartford policy.[6]  As noted above, the Agreement provided in pertinent part that Harmon and the Decedent would waive and relinquish "any and all interest in the other[']s . . . life insurance[.]"  Property Settlement Agreement, 4/22/2009, at Paragraph 9.  The Agreement also required Harmon and the Decedent to "execute, acknowledge and deliver any and all instruments which

---

[5] Additionally, under 23 Pa.C.S. § 3105(a), a court of common pleas, acting under the Divorce Code, may enforce an order of equitable distribution as provided for "with the terms of an agreement as entered into between the parties[.]"  Such action may be taken "at any time" a party to such an agreement has failed to comply.  *Id*. at § 3502(e).

[6] "On appeal from an order interpreting a marital settlement agreement, we must determine whether the trial court committed an error of law or an abuse of discretion.  We do not usurp the trial court's fact-finding function." ***Tuthill v. Tuthill***, 763 A.2d 417, 419 (Pa. Super. 2000).  The standard of review is *de novo*.  ***See Mazurek v. Russel***, 96 A.3d 372, 378 (Pa. Super. 2014).  "[T]he law of contracts governs marital settlement agreements." ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004).

may be necessary or advisable to carry into effect this mutual waiver and relinquishment of all such interest." *Id*., at Paragraph 18.

The law of contract interpretation is well-settled. "The goal . . . is to ascertain the intent of parties at the time they entered the disputed agreement and to give effect to the agreement's terms." *Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 610 (Pa. Super. 2009). "While courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; it is for the fact finder to resolve ambiguities and find the parties' intent." *Metzger v. Clifford Realty Corp.*, 476 A.2d 1, 5 (Pa. Super. 1984). Once a court finds contractual language to be clear, those terms must be given effect in strict accordance with the parties' stated intent:

> A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The "reasonably" qualifier is important: there is no ambiguity if one of the two proffered meanings is unreasonable. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001) ("[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."). Furthermore, reviewing courts will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. Finally, while ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law.

*Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (some citations omitted).

In this case, the terms of the Agreement are susceptible to only one reasonable interpretation. Both Harmon and the Decedent agreed to waive a

right to "any" proceeds of each other's life insurance policies. The parties further agreed to do whatever necessary to carry that waiver out. The Decedent had a life insurance policy at the time the divorce decree was entered, so Harmon contractually bound herself not only to relinquish her beneficiary status, but also to perfect the relinquishment if necessary.

Harmon nevertheless asserts that the waiver provision in the Agreement is worded too vaguely to relate to any particular life insurance policy. She relies mainly on *Equitable Life Assurance Soc. v. Stitzel*, 445 A.2d 523, 524 (Pa. Super. 1982), where a surviving ex-spouse remained the primary beneficiary of a life insurance policy even after divorcing the decedent and entering a waiver agreement as to intestate rights in the decedent's estate. This Court held that the waiver did not deprive the surviving spouse of his status as the primary beneficiary because the property settlement agreement did not at all refer to a life insurance policy or the waiver of that designation. *See Stitzel*, 445 A.2d at 524 (holding that a party must "explicitly waive his interest in the life insurance proceeds in the property settlement agreement.").

However, the Agreement in this case emphasizes "life insurance" in the title of the paragraph addressing mutual relinquishments of rights, and the language in the body of that paragraph refers to a waiver of "any and all interest" of such assets belonging to the other spouse. It was not necessary, as Harmon argues, for the Agreement to precisely identify the Hartford life

- 10 -

insurance policy by name in order for the waiver to have effect as to that particular asset. ***See Snaith v. Snaith***, 422 A.2d 1379, 1382 (Pa. Super. 1980) ("[N]ot every term of a contract must always be stated in complete detail[.]"). ***Greene v. Oliver Realty, Inc.***, 526 A.2d 1192, 1194 (Pa. Super. 1987) (a contract's terms are enforceable "if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.").

The Agreement's phrase, "any and all interest in the other['s]. . . life insurance," encompassed whatever such policy the Decedent had in his name. The lack of express terms excepting the Hartford life insurance policy from Harmon's waiver meant that she relinquished that right. Accordingly, the trial court did not err in construing the terms of the Agreement in favor of the alternative beneficiary, Eshenauer.[7]

**B.**

Harmon's next claim is that the trial court erred in misapplying ERISA and finding that the Agreement terminated her interest in the Decedent's life

---

[7] Neither party took sufficient action to remove Harmon as the primary beneficiary of the Decedent's policy. Harmon argues that this is evidence of the Decedent's intent to keep Harmon as the primary beneficiary, while the Estate argues that this is evidence that Harmon breached the waiver provisions of the Agreement. Since the Agreement is clear and unambiguous, "the intent of the parties is to be ascertained from the document itself." ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004).

insurance proceeds. Under Harmon's interpretation of ERISA, a designation as the primary beneficiary of a life insurance policy controls the ultimate distribution of the policy's proceeds, no matter what contractual claim another party may have to them. **See** Appellant's Brief, at 21 (citing 29 U.S.C. § 1104(a) (ERISA)).[8] Harmon contends that ERISA bars a court from ever directing the distribution of such proceeds to a person or entity other than the designated primary beneficiary.

The flaw in Harmon's reasoning is that it elevates a narrow statutory protection to an absolute and non-waivable right. It is true ERISA mandates that if a person is named as the primary beneficiary of their deceased ex-spouse's life insurance policy, entry of a divorce decree does not alone terminate that interest. **See** 29 U.S.C. § 1104(a)(1)(d) (requiring administrator of benefits to make payments to a beneficiary "in accordance with the documents and instruments governing the plan[.]"); **see also id**. at § 1002(2)(B)(8) (defining "beneficiary" as the person designated as such by the participant in an employment plan or under the terms that plan).

_____

[8] The trial court's ruling as to the interplay of ERISA and the Agreement involves a pure question of law that is reviewed under a _de novo_ standard. **See Mazurek**, 96 A.3d at 378.

This federal law supersedes the inconsistent Pennsylvania provision, 20 Pa.C.S. § 6111.2,[9] which purports to revoke the beneficiary status of a surviving ex-spouse by operation of law. **See** 29 U.S.C. § 1144(a) (providing that ERISA applies notwithstanding "any and all" state laws that relate to any employee benefit plan); **see generally Sauers**, 32 A.3d at 1246 (holding that ERISA preempts Section 6111.2).

Contrary to Harmon's claim, ERISA does not relieve her of valid contractual obligations to the Decedent. ERISA protected Harmon's status as the primary beneficiary of a life insurance policy, making her the *de facto* recipient of proceeds despite her divorce from the Decedent. After that payment was made, Harmon still had to honor the Agreement. As our Supreme Court has recently clarified, ERISA was never meant to be "some sort of rule providing continued shelter from contractual liability to beneficiaries who have already received plan proceeds." **In re Estate of Easterday**, 209 A.3d 331, 345 (Pa. 2019) (quoting **Estate of Kensinger v. URL Pharma**, 674 F.3d 131, 136 (3d Cir. 2012)).

Here, Paragraphs 9 and 18 of the Agreement require Harmon to "execute, acknowledge, and deliver" the instruments necessary to fulfill her waiver and relinquishment of her interest in the disputed life insurance funds.

_____

[9] Section 6111.2 of the Pennsylvania Probate, Estates and Fiduciaries Code provides that a divorce or pending divorce have the effect of rendering ineffective a surviving spouse's designation as a beneficiary of a life insurance policy. **See generally** 20 Pa.C.S. § 6111.2.

Once the Hartford distributed the policy funds to Harmon, "ERISA was no longer implicated" and there is "no reason why the Estate should not be able to enforce its contractual rights[.]" ***Kensinger***, 674 F.3d at 138 (holding that ERISA did not bar court from ordering decedent's ex-wife to surrender money she had received through decedent's pension plan because of her prior agreement to waive the right to those funds); ***Easterday***, 209 A.3d at 346 (holding that "ERISA does not preempt a state law breach of contract claim to recover funds that were paid pursuant to an ERISA-qualified employee benefit plan.").  Thus, the trial court did not run afoul of ERISA by enforcing the Agreement, and the order directing Harmon to remit the insurance proceeds to Eshenauer must stand.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2020